792 So.2d 80 (2001)
Kindred C. PRIEST, Jr., Plaintiff-Appellee,
v.
CITY OF BASTROP, et al, Defendant-Appellant.
No. 34,841-CA.
Court of Appeal of Louisiana, Second Circuit.
July 11, 2001.
*81 Law Offices of William R. Coenen by Dawn Hendrix Mims, Counsel for Appellant.
Geary S. Aycock, Counsel for Appellee.
Before NORRIS, WILLIAMS and GASKINS, JJ.
GASKINS, Judge.
The City of Bastrop appeals a judgment in favor of plaintiff Kindred C. Priest, Jr., arising from an incident in which he injured his ankle by stepping into a depression in the street at the end of his driveway. For the following reasons, we affirm the trial court's judgment.

FACTS
The plaintiff is a licensed practical nurse in his late 40's. He worked 12-hour night shifts at Morehouse General Hospital in Bastrop, Louisiana. In order to maintain his schedule of working at night, he would sleep during the day and stay up at night even when not working.
In November 1997, he moved into a residence on Gemini Drive which was owned by his family. The house had formerly been his grandmother's home. When he moved in, he noticed that the street near the driveway was collapsing. Over time, the condition of the curb and gutter appeared to worsen.
In February 1998, the plaintiff spoke to a member of a city crew working in the neighborhood and asked him to look at the problem. However, the City did not repair the street. In March 1998, the plaintiff went to the public works office at city hall and reported the street deterioration *82 to them. He was told that someone would be sent to investigate. Again, no action was taken.
Consequently, in April 1998, the plaintiff went back to the public works office and spoke to a man whom he assumed was the head of the department. This man wrote down the address and stated that he would send someone to look at the situation. Thereafter, the plaintiff saw painted markings on the street near the depressed area. At this time, the gap between the end of the driveway and the collapsed area was four to six inches.
On May 18, 1998, the plaintiff took his garbage out to the curb at about midnight. Weekly trash pick-up was scheduled for the next morning at about 6:00 a.m.; however, the exact time of pick-up varied. The plaintiff testified that he did not place his trash on the curb during the afternoon; he had had problems with dogs turning it over. First, he wheeled out two garbage cans and placed them on the side of the road. He then took two boxes and placed them on the curb for trash pick-up. At this time, he stepped on the edge of the driveway and his foot went into the depressed area. He heard a loud pop and felt instant pain in his left ankle.
That morning the plaintiff saw his family physician, and his ankle was x-rayed. He was subsequently referred to an orthopedist, Dr. Nichols, who placed his foot in a walking cast. He wore this cast for six to eight weeks. Thereafter, he was placed in an air cast which he wore until August 1998. The plaintiff was released to return to work on August 4, 1998. At trial, he testified that he still occasionally experienced pain and swelling with his ankle, due in large part to the amount of time he necessarily spent on his feet as an LPN.
Following the plaintiffs accident, his father complained to city hall again about the road condition, and the plaintiff spoke to the mayor. A few days later, additional marks were painted on the collapsed area, and soon thereafter the spot was repaired by city employees.
The plaintiff filed suit against the City of Bastrop in June 1998. Following a bench trial in April 2000, the trial court rendered judgment in the plaintiffs favor. General damages of $18,750.00 were awarded, as were special damages of $5,119.75 for unrecovered lost wages and medical expenses. However, the court assessed comparative fault of 35 percent against the plaintiff and reduced the total amount of the award accordingly.
The City appeals.

CITY'S LIABILITY
The City argues that the trial court erred in finding that the condition was unreasonably dangerous and that the City was negligent for not repairing the area sooner.
At trial, the maintenance supervisor and the assistant director of the public works department testified that they did not consider the drop-off in front of the plaintiff's house to be a hazardous situation; because it was not in the roadway, it was not viewed as an "emergency" requiring immediate attention. The assistant director testified that these sorts of spots were not unusual in Bastrop and that it was cost-prohibitive for the City to repair all of them. However, he admitted that if a sidewalk were in the same condition as the curb and gutter in front of the plaintiffs house, the department would eventually repair it. He testified that it took one and a half to two months from the time reported for the area to be repaired.
After reviewing the evidence (including the photographs), the trial court held that the condition presented an unreasonable risk of harm to motorists and pedestrians. *83 Through the plaintiff's complaints, the trial court determined that the City had notice of the condition.
In Hammons v. City of Tallulah, 30,091 (La.App.2d Cir.12/10/97), 705 So.2d 276, writs denied, 98-0407 (La.3/27/98), 716 So.2d 892, 894, where the resident of a halfway house was injured in a fall on a sidewalk, we observed that the City of Tallulah had a duty to maintain its side-walks in a reasonably safe condition. We further stated that to render the City liable in damages, the defect complained of had to be unreasonably dangerous or calculated to cause injury so that an unreasonable risk of harm was determined to exist. Likewise, in the instant case, the City of Bastrop has a duty to maintain its streets in a reasonably safe condition, and it is liable in damages for defects that are unreasonably dangerous.
In Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, the Louisiana Supreme Court held that in determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. The court also stated:
Because a determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case, followed by an application of those facts to a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard.
We are aware that in Reed, supra, the supreme court stated that it is common for the surfaces of streets, sidewalks, and parking lots to be irregular, and that it is not the duty of the party having garde of them to eliminate all variations in elevations existing along the countless cracks, seams, joints and curbs. We also are cognizant that in Thornton v. Board of Supervisors of Louisiana State University, 29,898 (La.App.2d Cir.10/29/97), 702 So.2d 72, we affirmed a partial summary judgment in favor of the owner of an outdoor ramp where the plaintiff had admitted that she chose to walk over wet leaves on the walkway, rather than using other available walkways that were not so covered. We stated that "where a risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable."
Unquestionably, the City had garde over this area of the street that was pulling away from the driveway. Before the City can be found liable for this defect, it must have actual or constructive notice. La. R.S. 9:2800(B). The plaintiff's complaints were more than adequate to give actual notice to the City.
In the instant case, the plaintiff knew prior to his accident, as did the City, of the condition at the end of his driveway. However, his knowledge did not erase the City's duty and did not automatically make the risk of injury a reasonable one. While the fact of the plaintiff's knowledge certainly is very relevant for purposes of assessing comparative fault, the trial court noted that the City required residential garbage to be carried to the street to be picked up, and the plaintiff obviously had to take his garbage to the side of the street on a regular basis.
When a person is regularly exposed to a defect, even though the person *84 has knowledge of that defect, there still is the danger of that person inadvertently forgetting the defect's presence, especially when occupied with a task. The fact that an individual exposed to a defect has knowledge of its existence does not mean that a reasonable person having garde over a defective thing has no obligation to take steps to eliminate that risk of harm. Instead, we come back to the balancing test in Reed, supra, in which the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. The court in Reed also stated the inquiry as "whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others?" The trial court's conclusion about unreasonable risk of harm then must be evaluated on appeal pursuant to the manifest error standard of review.
This is not a case in which the City attempted to show that it could not afford to repair its streets, or that its workforce did not have the time or materials to repair the defect at issue. Instead, this is simply a case where the City put a very low priority on the need for fixing the particular defect. It is obvious that paved streets have great social utility. However, the trial court found that the gravity and risk of harm weighed heavily, declaring the pavement to have "a significant displacement" and concluding that the City of Bastrop was negligent in not repairing it sooner.
Through the photographic evidence, the trial court had relevant evidence upon which it could make its factual finding of a significant displacement, as opposed to the "minimal" defect in Reed, supra. When we apply the proper appellate standard of manifest error to the trial court's factual conclusion, we detect no abuse of discretion in the trial court's finding that the defect in the street constituted an unreasonable risk of harm in this case. The significant displacement constituting the defect, the location of the defect causing the plaintiff to be regularly exposed to its risk, the City's knowledge of the risk, the amount of time that elapsed between the City's knowledge of the defect and the City's repair of the defect shortly after the plaintiffs accident, and the seriousness of the plaintiffs ankle injury, all weigh in favor of the trial court's factual evaluation.

COMPARATIVE FAULT
The City asserts that the trial court erred in assessing only 35 percent of the fault to the plaintiff under the circumstances of this case. We disagree.
Pursuant to Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), the trier of fact will compare the relative fault of the parties in the assessment of liability. In assessing comparative fault, the following factors should be considered: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, supra. The trier of fact's allocation of fault is a factual determination subject to the manifest error rule. Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46; Kedia v. Brookshire Grocery Company, 32,324 (La. App.2d Cir.12/15/99), 752 So.2d 944, writ denied, XXXX-XXXX (La.3/17/00), 757 So.2d 640.
Applying the principles of appellate review, we find no manifest error in the *85 trial court's allocation of comparative fault. While it is clear that the plaintiff was aware of the situation and that he had in fact reported it to the City, it is also apparent that the City was in the superior position to remedy this dangerous condition of long duration which posed a threat to persons walking in the vicinity of the curb. Thus, we cannot say that the trial court was clearly wrong in assessing 65 percent fault to the City and 35 percent to the plaintiff.

QUANTUM
The City attacks the reasonableness of the trial court's damage awards, citing Terry v. Sutherlands Lumber Company, 32,345 (La.App.2d Cir.9/24/99), 742 So.2d 756. In that case, the trial court awarded general damages in the amount of $7,500.00 to a woman who sprained her left ankle and knee after tripping and falling over a floor display. We noted that in determining whether the trier of fact abused its discretion in making an award, the evidence must be viewed in the light most favorable to the prevailing party, and that only after review of the record showed an abuse of discretion could an appellate court determine that the award was either excessive or insufficient. The evidence in Terry showed that after the plaintiff was transported to the hospital, she was examined and diagnosed with a mild sprain of the left ankle and left knee. She sustained a soft tissue injury to her left ankle and left knee for which she sought treatment for about four months, and she experienced "moderate to significant" pain. After reviewing the record, we concluded that the trial court's award of $7,500.00 in general damages was not an abuse of discretion.
In contrast to the less serious injury in Terry, the treating doctor in the instant case found that the plaintiff's symptoms were sufficient to treat for a complete ligament rupture. Because of the dissimilarity of the injuries, we conclude that Terry is of little help to the City in attempting to prove an abuse of discretion on the part of the trial court. Furthermore, while the trial court's award of general damages appears to be in the upper range of permissible awards for such an injury, we do not find it to be an abuse of the trial court's great discretion. Therefore, we affirm that portion of the trial court's judgment.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed against the City pursuant to La. R.S. 13:5112.
AFFIRMED.