968 So.2d 863 (2007)
Lori A. RICKS, Plaintiff-Appellee
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 42,675-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*865 Davis Law Office, LLC, by S.P. Davis, Sr., for Appellant.
Russell O. Brabham, Shreveport, for Appellee.
Before WILLIAMS, CARAWAY and MOORE, JJ.
MOORE, J.
The City of Shreveport appeals a judgment finding it 25% at fault and assessing general damages of $100,000 in favor of Lori A. Ricks, who stepped into a storm drain grate located between the sidewalk and the street of her house. Ms. Ricks answers the appeal. We affirm.

Factual Background
Ms. Ricks and her husband moved into the house at 948 Charlotte Street, in the North Market/Aero Drive area of Shreveport, in August 2002. At the time, this area was not inside the city limits, but annexation was before the city council and was approved effective October 4, 2003.
Ms. Ricks testified that as soon as she moved in, she saw the storm drain grate in the ditch between the sidewalk and the street. When she mowed the yard over the last weekend of August 2002, she noticed standing water in the ditch. Concerned about West Nile Virus, she called the Division of Streets & Drainage to report this. The division thought there was a leak under the sidewalk and made two attempts to patch it, without success.
Meanwhile, however, the City Engineer had designated this portion of Charlotte Street to receive a new water and sewer line. The project was contracted to Southern Soil Environmental, which began work on September 22, 2003 and finished in mid-December 2003. According to Ms. Ricks, the contractors laid a "No Parking" sign across the top of the grate. Apparently the new water and sewer line solved the problem, as nobody lodged any more complaints about standing water.
Nine months later, on September 14, 2004, Ms. Ricks was cutting the grass and Weed Eating the ditch. She testified that usually her landlord mowed this part of the yard, which was in the city's right-of-way, and that this was only the second time she had done it herself. Regardless, while wielding the Weed Eater she stepped backward and her left foot went through the grate. She fell straight down, stopping when her foot hit bottom, with the grate around mid-thigh. She screamed out loud, thinking she had broken her leg.
Dr. Richard Kamm, a general practitioner, extensively described Ms. Ricks's course of treatment. Initially he diagnosed soft-tissue injuries and treated her conservatively for about three months. In December 2004, however, she started complaining of pain in her mid-and lower back, with limitation of motion, and later, pain radiating from the back into the left leg. When she failed to improve, he ordered an MRI; this showed minimal bulging disks *866 at L4-5 and L5-S1, not apparently impinging on any nerves, but he believed her complaints of constant, debilitating pain.
Dr. Kamm referred her to Dr. Anil Nanda, a neurosurgeon and chair of the neurosurgery department at LSU Health Sciences Center-Shreveport. He ordered a myelogram and CT scan in February 2006; these showed a bulging L4-5 disk and stenosis from L3 through L5. Both doctors testified that this condition predated the accident. Dr. Nanda thought her present condition was solely a function of her age and overweight, but he admitted that a traumatic incident can make a condition symptomatic. Dr. Kamm agreed that Ms. Ricks had some degenerative disk disease, but he felt that the accident directly caused the bulging disk. Dr. Kamm also admitted that for awhile, Ms. Ricks was taking six Lortabs a day, but he thought this had less to do with addiction than with her intractable pain.
Although he initially thought that surgery would be only marginally helpful, in November 2006 Dr. Nanda performed a laminectomy at L4 and shaved the disks at L3, L4 and L5. This was only 1½ weeks before trial, so Dr. Kamm had not performed a functional capacity exam or calculated a disability rating.
Ms. Ricks testified that the injury had curtailed her normal activities such as scuba diving, rescue diving and EMS work. At the time of the accident, she was working as a civilian EMS at Barksdale AFB in Bossier City, and left because funding for the job ran out. She testified that she would not be able to work in any position that required her to stay seated a long time. At the time of trial in December 2006, she was doing state vehicle inspections for $2 per vehicle.
Ms. Ricks's husband, Ronald Ricks, also testified that he had seen the grate as soon as they moved in and noticed that it was bent. Ronald's employer, Steven Swords, testified that before the Rickses moved in, he had leased the house to use as an office, and was aware the grate was bent as far back as 1997. A neighbor, Mrs. Dorsey, testified that the grate had been bent for at least 13 years. None of these witnesses, however, called the city to report it. Mr. Swords took pictures of the grate shortly after Ms. Ricks fell through it.
The photographs, marked "9-14-04," showed that the metal slats were somewhat widely spaced and, on one side, forced apart, presumably where Ms. Ricks's leg fell through. Grass was growing over a small portion of the grate. The superintendent of Streets & Drainage, Ernie Negrete, testified that this grate was defective, and had he known of its condition, repairs would have been a simple maintenance matter; however, in 2003 and 2004, his department received no complaints about it. A city administrative assistant, Cassandra Singleton, confirmed that nobody had reported the grate to the city.
The assistant city engineer, Ali Mustapha, and the assistant superintendent of the Office of Water & Sewerage ("DOWAS"), Lonnie Fouts, testified that they were not personally aware of the condition of the grate, and nobody had called it to their attention. These witnesses were emphatic that the storm drain grate was part of the Streets & Drainage system to handle runoff rainwater, and in no way connected to the DOWAS lines installed in 2003. Mr. Mustapha admitted that in October 2002, his office received a topographic survey of the area showing the precise location of the grate but not that it was in any way defective. He also admitted that while Southern Soil was performing the contract, a city project manager or city inspector was present periodically to inspect the progress.

*867 Action of the District Court

After trial, the court ruled from the bench. It quoted from Priest v. City of Bastrop, 38,841 (La.App. 2 Cir. 7/11/01), 792 So.2d 80: "The fact that an individual [plaintiff] exposed to a defect has knowledge of its existence does not mean that a reasonable person [city] having garde over a defective thing has no obligation to take steps to eliminate that risk of harm." The court then cited the balancing test of Reed v. Wal-Mart Stores Inc., 97-1174 (La.3/4/98), 708 So.2d 362, and accepted Mr. Negrete's testimony that this repair would have been a simple maintenance item; ergo, the grate posed an unreasonable risk of harm. The court further found constructive notice based on the city engineer's periodic inspections of the water and sewer project in October 2003. However, the condition of the grate was "open and obvious to all," as not only Ms. Ricks, but her husband and his employer, all knew about it before the accident. The court therefore allocated fault of 25% to the city and 75% to Ms. Ricks.
As to quantum, the court accepted Ms. Ricks's statement of special damages, $39,579.29. It found that she was "somewhat fragile medically, but asymptomatic, due to the degenerative problem," and it was "a coin flip" as to whether the surgery was really necessary. Despite the "paucity of objective indication of injury," the court awarded general damages of $100,000.
With the reduction for Ms. Ricks's percentage of fault, the court rendered judgment in her favor for $34,894.82. As noted, the city has appealed, raising two assignments of error, and Ms. Ricks has answered the appeal, also raising two assignments of error.

Discussion: Liability
By its first assignment of error, the city urges the district court erred in allocating only 75% of the fault to Ms. Ricks. First, it submits the grate was not defective. The city concedes that the court found constructive notice of the defect as required by La. R.S. 9:2800 C, but argues that other facts militate against a finding of defect: there was a total absence of actual notice; the condition of the grate was perfectly apparent to Ms. Ricks and everyone else who lived nearby; and the grate belonged to the parish for at least 13 years before the area was annexed. Second, even if the grate was defective, Ms. Ricks was fully aware of its location and condition; under the factors enunciated in Watson v. State Farm, 469 So.2d 967 (La. 1985), she should be 100% at fault.
Ms. Ricks responds that the court's finding of a defect was not plainly wrong in light of Mr. Negrete's admission to that effect. By answer to appeal, she urges the court allocated her too much fault. Even though she had lived there for two years, she had mowed that area only once or twice and had no other reason to walk around the grate. She submits that her misstep was only a momentary lapse of attention, similar to the plaintiff who lit a cigarette while pumping diesel fuel contaminated with gasoline and was found only 10% at fault in Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991).[1] By contrast, the city dealt with "banquettes, water meters, drainage grates, manhole covers, etc., on a regular basis," placing it in a superior position to notice the defect. She concludes the city was *868 100% at fault, as was found in Lewis v. City of Shreveport, 36,659 (La.App. 2 Cir. 12/11/02), 837 So.2d 44.
Under La. C.C. art. 2317, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Under La. R.S. 9:2800 C,
[N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
To establish a claim under these provisions, the plaintiff must show (1) the thing which caused the damage was in the care or custody of the public entity, (2) the thing was defective due to a condition that created an unreasonable risk of harm, (3) the public entity had actual or constructive knowledge of the condition yet failed to take corrective action within a reasonable period of time, and (4) the defect was a cause in fact of the plaintiff's harm. Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216; Fordham v. Nissan North America, 41,987 (La.App. 2 Cir. 4/4/07), 954 So.2d 346. Constructive notice means the existence of facts which imply actual knowledge. La. R.S. 9:2800 D.
The unreasonable risk of harm analysis requires the trier of fact to balance the gravity and risk of harm against individual and societal rights and obligations, the thing's social value and utility, and the cost and feasibility of repairing the defect. Reed v. Wal-Mart Stores, supra; Lawrence v. City of Shreveport, 41,825 (La.App. 2 Cir. 1/31/07), 948 So.2d 1179, writ denied, XXXX-XXXX (La.4/20/07), 954 So.2d 166. The district court's findings under R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566; Lawrence v. City of Shreveport, supra. In other words, the court of appeal will not set aside the trier's findings in the absence of manifest error or unless they are clearly wrong. Henderson v. Nissan Motor Corp., 2003-606 (La.2/6/04), 869 So.2d 62; Johnson v. City of Bastrop, 41,240 (La. App. 2 Cir. 8/1/06), 936 So.2d 292.
The city does not contest that it had custody and control over the grate or that it was the cause in fact of Ms. Ricks's injuries. The city does assert, in a conclusory way, that the grate was not defective, but Mr. Negrete, whose Division of Streets & Drainage manages the city's storm drains, admitted that this grate was defective. The photos show that several of the slats have been damaged, spread farther apart than reasonably necessary to serve the useful purpose of accepting excess rainwater. The district court was not plainly wrong to find a defect.
The city's principal argument is lack of notice. We recognize that this grate was not part of the city's drainage system until annexation some 11 months prior to this accident, and since annexation nobody had lodged any complaint about it. We are also aware that a private contractor performed the street and drainage work on behalf of DOWAS, which did not exercise control over storm drains. However, the record confirms that during the work on the project, an inspector or a project managera city employeewas onsite regularly. His frequent presence at or near this grate, in its readily apparent condition, are facts which imply actual *869 knowledge of the hazard. La. R.S. 9:2800 D. On this record, we cannot say the district court was plainly wrong in finding that Ms. Ricks proved her claim under La. C.C. art. 2317 and R.S. 9:2800.
Under La. C.C. art. 2323, "If a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss." Comparative fault applies to claims against public entities under La. C.C. art. 2317 and R.S. 9:2800. Priest v. City of Bastrop, supra. In assessing comparative fault, the courts consider (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm, supra. The trial court's allocation of fault is subject to manifest error review. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607; Priest v. City of Bastrop, supra.
Again, the photographs are more demonstrative than the arguments. In particular, Exhibit P-9 shows a grate in full view, prominently placed between the sidewalk and street. Even in tall grass, this would not be entirely concealed. Having lived in the house for over two years, Ms. Ricks should have been intimately aware of this important part of the drainage system, regardless of the city's failure to notice and correct it.
Ms. Ricks urges that her situation is analogous to that of the plaintiff in Guidry v. Frank Guidry Oil Co., supra, but the instant case does not present the truly hidden danger of mislabeled fuel and an ultrahazardous substance like gasoline. Lewis v. City of Shreveport, supra, is also inapposite as in that case the city stipulated its liability. In light of the factors enunciated in Watson v. State Farm, supra, and Priest v. City of Bastrop, supra, we cannot say the district court was plainly wrong to allocate fault 75% to Ms. Ricks and 25% to the city.
These assignments of error lack merit.

Quantum
By its second assignment of error, the city urges the court erred in awarding $100,000 in general damages. It concedes that the court's factual finding is entitled to great weight and that the presumption of causation applied. Methvin v. Ferguson, 35,138 (La.App. 2 Cir. 9/26/01), 796 So.2d 712. However, it contends that Ms. Ricks received a huge amount of pain medication, declined a conservative steroid injection in favor of major surgery, and had no disability rating. It suggests that for an injury resulting in a bulging disk, an award of $30,000 is appropriate. Harrison v. Richardson, 35,512 (La.App. 2 Cir. 1/23/02), 806 So.2d 954; Orillac v. Solomon, 33,701 (La.App. 2 Cir. 8/23/00), 765 So.2d 1185; Holford v. Allstate Ins. Co., 41,187 (La.App. 2 Cir. 6/28/06), 935 So.2d 758.
By answer to appeal, Ms. Ricks urges that an accident requiring a multilevel laminectomy warrants much greater general damages. In support, she cites Jones Act cases in the $350,000-$400,000 range, as well as slip-and-fall cases that affirmed damages in the $200,000-$300,000 range. DeRouen v. Audirsch, 25,847 (La.App. 2 Cir. 6/28/94), 639 So.2d 476; Stewart v. Winn Dixie La. Inc., 96-599 (La.App. 5 Cir. 12/11/96), 686 So.2d 907; Bradford v. Winn Dixie of La. Inc., 94-0667 (La.App. *870 4 Cir. 12/28/94), 648 So.2d 464. She concludes that the minimum affirmable general damages would be $225,000.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve "mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802; Nelson v. Southeast Food Inc., 39,157 (La.App. 2 Cir. 1/28/05), 892 So.2d 790. In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion is left to the judge or jury. La. C.C. art. 2324.1; Kaiser v. Hardin, supra. The role of the appellate court in reviewing awards of general damages is not to decide what it considers an appropriate award, but rather to review the exercise of discretion of the trier of fact. Id.; Hae Woo Youn v. Maritime Overseas Corp., 92-3017 (La.9/3/93), 623 So.2d 1257, cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry is whether the trier of fact abused its vast discretion in assessing the amount of damages. Kaiser v. Hardin, supra; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after finding that the trier did in fact abuse its great discretion may the appellate court resort to prior awards, and then only to determine the highest or lowest point reasonably within that discretion. Kaiser v. Hardin, supra; Coco v. Winston Industries Inc., 341 So.2d 332 (La.1976).
A defendant takes his victim as he finds her and is responsible for all natural and probable consequences of his tortious conduct; where his action aggravates a preexisting condition, he must compensate the victim for the full extent of her aggravation. Touchard v. Slemco Elec. Found., 99-3577 (La.10/17/00), 769 So.2d 1200; Edwards v. LCR-M Corp., 41,125 (La.App. 2 Cir. 7/12/06), 936 So.2d 233.
The district court noted a "paucity of objective indication of injury" and that the need for major back surgery was "a coin flip"; this court would also observe that Ms. Ricks's neurosurgeon, Dr. Nanda, never linked the surgery to the accident, but rather to degenerative disk disease and the patient's excessive body weight. These facts completely undermine Ms. Ricks's claim that the award was insufficient; taken alone, they would support the city's claim that it was abusively high.
However, the treating physician, Dr. Kamm, testified that physical therapy had been ineffective, that her debilitating pain was related to the accident, and that the surgery was a "last resort." The district court found that Ms. Ricks was "somewhat fragile medically," and obviously accepted her descriptions of pain and a diminished lifestyle. There is no compelling reason to overturn the court's favorable view of her sincerity. Bearing in mind that the city must compensate Ms. Ricks for the full extent of the aggravation of any preexisting condition, we cannot say the district court's award of general damages is excessive or inadequate. Kaiser v. Hardin, supra; Nelson v. Southeast Food Inc., supra.
These assignments of error lack merit.

Conclusion
For the reasons expressed, the judgment is affirmed. The appellate filing fee of $119.50 is to be paid by the City of Shreveport in accord with La. R.S. 13:5112.
AFFIRMED.
NOTES
[1] Overruled on other grounds in Gauthier v. O'Brien, 92-2921 (La.5/24/93), 618 So.2d 825; superseded by 1996 amendment to La. C.C. art. 2323, as recognized in Grayson v. R.B. Ammon & Asso. Inc., 1999-2597 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, writs denied, XXXX-XXXX, 3311 (La.1/26/01), 782 So.2d 1026, 1027.