996 So.2d 377 (2008)
Kenneth and Brenda MASON, et al., Plaintiffs-Appellants
v.
MONROE CITY SCHOOL BOARD and The City of Monroe, Defendants-Appellees.
No. 43,595-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
*378 Newman & Oliveaux by Todd G. Newman, Trey N. Magee, Monroe, for Appellants Kenneth Mason, Brenda Mason, Brelynn Mason and Kenneth Mason, Jr.
Allen & Gooch by S. Jacob Braud, Lafayette, The Lawrence Law Firm by L. Douglas Lawrence, Bastrop, for Appellee Monroe City School Board.
Kevin D. Alexander, Monroe, for Appellee Community Youth Activity Sports Inc.
Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, J.
The plaintiffs, Kenneth and Brenda Mason, individually, and Kenneth Mason on behalf of his minor children (hereafter "the Masons"), filed suit against the defendant, the Monroe City School Board ("MCSB"), for damages resulting from injuries sustained by the minor child, Brelynn Mason, who fell down the bleachers while attending a ball game at Carroll High School. The trial court granted a summary judgment in favor of MCSB upon finding that the plaintiffs did not produce any evidence to establish a genuine issue for trial as whether there was a defect in the bleachers or whether MCSB had notice of any defect. We affirm.

FACTS
While attending a "pee-wee" football game at Carroll High School on November *379 9, 2002, Brelynn Mason fell down the steps of the bleachers, through the rail at the foot of the bleachers, and came to rest on a concrete surface. Seeking compensation for the injuries Brelynn sustained, her parents filed suit against MCSB and the City of Monroe. In an amended petition, they added Community Youth Activity Sports, Inc., ("CYAS"), the sponsor of the game, as a defendant. The claims against the City of Monroe were eventually dismissed.
In the petition, the Masons alleged that Brelynn "lost her footing and fell down the stairs." They asserted that the bleachers were "unreasonably dangerous in design, construction, and maintenance." Specifically, the petition alleged that the steps of the bleachers lacked "adequate traction guards" and that the front of the bleachers lacked "proper safety guards ... to prevent people or things from falling through." The Masons claimed that MCSB had notice of the defects and an opportunity to remedy them prior to the accident.
In its answer, MCSB denied the existence of a defect. Alleging improper supervision, MCSB filed a cross-claim against CYAS and a reconventional demand against the Masons. MCSB also filed an exception of nonjoinder regarding the persons who designed and constructed the bleachers. CYAS filed its own cross-claim against MCSB alleging that it was solely responsible for maintaining the premises where the accident occurred.
Over three years after the suit was filed, MCSB filed a motion for summary judgment seeking to have the Masons' claims dismissed. The motion argued that the bleachers were not defective and did not pose an unreasonable risk of harm. MCSB also asserted that it had neither actual nor constructive notice of any defect and no opportunity to remedy any alleged defect. In support of the motion for summary judgment, MCSB offered two affidavits.
The first affidavit is that of Roger D. White, custodian and building supervisor at Carroll High School since 1999. White was present at the game and witnessed Brelynn's fall. The affidavit relates that White observed Brelynn "running down the steps of the football stadium, while playing and being chased by another child, at the time the fall occurred." Prior to the fall, White had asked her to stop running, and he observed that family members with the child did nothing to stop her from running. White attested to his familiarity with the bleachers and the condition of the steps. He had not observed and was not aware of any defect in the steps or guardrails of the bleachers.
The second affidavit was that of Robert C. Johnson, who served as principal of Carroll High School from September 1998 through July 2003. Though Johnson was on the school's premises when the accident occurred, he did not witness it. However, his affidavit relates that he is familiar with the area where she fell and that he neither observed nor was aware of any defects in the steps, guardrails, design, or construction of the stadium. Furthermore, Johnson was not aware of any similar incidents occurring before or after Brelynn's fall.
In opposition, the Masons argued that whether there was a defect that created an unreasonable risk of harm and whether MCSB had notice and failed to remedy the unsafe condition are material issues of fact for trial. The Masons asserted that resolution of these issues would turn on credibility determinations that are inappropriate on summary judgment. The affidavits of LaSheila Jordan, Brelynn's godmother, and Sarah Campbell Philips, Jordan's friend, were offered by the Masons. Brelynn had attended the game with the two women. The Masons argued that these *380 affidavits contradict those offered by MCSB.
The affidavit of LaSheila Jordan explained that Brelynn met other little girls at the game and began playing with them. Jordan "did not see any of the children being unruly or running up and down the steps." The affidavit relates that Brelynn came up the steps to where Jordan and Campbell were sitting to get something for her doll. As Brelynn walked back down the steps to the other girls, she fell. Jordan said that Brelynn tried to catch herself by reaching for the guardrail but that she fell through the rails to the concrete below. Jordan attested, "I do not recall seeing any type of safety tape on the steps."
The affidavit of Sarah Philips relates the same basic facts as in Campbell's affidavit. Philips did not see the children running on the steps. She recalled that Brelynn came up to get something for her doll and then headed down the steps to join the girls. Philips affidavit states that Brelynn was walking when she slipped and fell. She reached for the rail, but fell through it. Philips attested, "I noticed that the steps had no traction tape or any other type of safety tape."
The motion for summary judgment was argued on November 27, 2007, after which the trial court explained its reasons for granting the judgment. The trial court found that the Masons "failed to come forward with a prima facie case, showing that there was either notice or that there was a vice or defect." The trial court found no facts in dispute about the condition of the steps or the guardrail and noted that there was no showing based on personal knowledge of any defect. A judgment dismissing the Masons' claims against MCSB was signed December 7, 2007. The trial court designated the judgment a final judgment pursuant to La. C.C.P. art. 1915.[1] This appeal by the Masons followed.

DISCUSSION
A summary judgment is subject to a de novo review on appeal applying the same criteria as the trial court in determining whether summary judgment is appropriate. Gray v. American Nat. Property & Cas. Co., XXXX-XXXX (La.2/26/08), 977 So.2d 839. A summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).
The burden of proof remains with the party who moved for summary judgment. La. C.C.P. art. 966(C)(2). However, when the moving party will not bear the burden of proof at trial on the matter before the court on the motion and points out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, the non-moving party must produce factual support to establish that he will be able to satisfy his evidentiary burden at trial. Otherwise, there is no genuine issue of material fact for trial, and summary judgment is appropriate. La. C.C.P. art. 966 and 967; Gray, supra.
Substantive law sets forth the burden of proof that the Masons must satisfy to prevail on their claim against MCSB. La. Civ. C. art. 2317 states that we are responsible for the damage caused by our own actions *381 as well as by things in our custody. Ricks v. City of Shreveport, 42,675 (La.App. 2d Cir.10/24/07), 968 So.2d 863. This principle extends to public entities, such as school boards, under La. R.S. 9:2800, which provides in relevant part:
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
Therefore, to establish a claim against MCSB under these provisions, the Masons must show that the stands were in the care and custody of MCSB, that the stands had a defective condition that created an unreasonable risk of harm, that MCSB had actual or constructive knowledge of the condition but failed to take corrective action within a reasonable time, and that the defect was the cause in fact of Brelynn's injuries. Ricks v. City of Shreveport, supra.
The Masons argue that material issues of fact exist as to whether there was a defect in the stands that created an unreasonable risk of harm. They assert that the affidavits of LaSheila Jordan and Sarah Philips are in direct contradiction to those of Roger D. White and Robert C. Johnson and that credibility determinations will be required to resolve the factual issues in dispute. They frame the conflict as whether Brelynn was running on the steps or whether she slipped on defective steps and fell through an inadequate guardrail. With regard to notice, the Masons argue that MCSB should have conducted inspections and discovered the defective condition of the steps and guardrails.
MCSB counters that the Masons produced no facts, other than the occurrence of the accident, to show a defect in either the steps or guardrail. MCSB contends that the affidavits offered by the Masons merely restate the allegations contained in their petition and demonstrate no personal knowledge of any defect. Also, MCSB asserts that the Masons produced nothing to show that it had actual or constructive notice of any defect, but argue only that someone at MCSB should have seen the alleged defects. However, the affidavits of Johnson and White show that they were familiar with the area where the accident occurred and had not observed any defects that posed an unreasonably dangerous condition. The Masons did not produce evidence of prior accidents, deferred maintenance, failure of the stadium to satisfy building codes, or any expert testimony to show a defect or support their claim.
In moving for summary judgment, MCSB offered two affidavits by individuals familiar with the high school stadium where the accident occurred. Neither Roger D. White, the building supervisor and custodian, nor Robert C. Johnson, the principal of Carroll High School, had observed any defects in the steps or guardrails of the area where the accident occurred. White's affidavit also related that he personally observed Brelynn running prior to and at the time of her fall. The affidavits of Philips and Campbell deny that Brelynn was running and suggest that the steps of the bleachers lacked some type of traction tape. The implication is that traction tape on the steps would have prevented Brelynn from falling. The Masons rely on the lack of traction tape and the fact that Brelynn fell through the rail *382 at the bottom of the bleachers as evidence of defects.
A school board, like other property owners, is obligated to keep its premises in a reasonably safe condition. Summerall on Behalf of Summerall v. Ouachita Parish School Board, 27,643 (La.App. 2d Cir.12/8/95), 665 So.2d 734. A defect is a flaw inherent or existing in the thing that creates an unreasonable risk of harm to others. Id. Not every imperfection or irregularity is a defect for purposes of imposing liability. Id. Whether a thing creates an unreasonable risk of harm is determined by balancing the gravity and risk of harm against individual and societal rights and obligations, the thing's social value and utility, and the cost and feasibility of repair. Ricks, supra.
In addition to showing that the damages resulted from a defect that created an unreasonably dangerous condition, the plaintiffs must also prove the MCSB had actual or constructive notice of the defect. Summerall, supra. Constructive notice exists when there are facts from which imply actual knowledge of the defect. This means that the facts show that the defective condition existed for such a period of time that it should have been discovered and repaired if the public entity had exercised reasonable care. Williams v. City of Mansfield, 42,319 (La.App. 2d Cir.8/15/07), 962 So.2d 1187; Johnson v. City of Bastrop, 41,240 (La.App. 2d Cir.8/1/06), 936 So.2d 292.
The affidavits offered by MCSB point out an absence of a defect in the bleachers where the accident occurred and a lack of notice on the part of MCSB of any alleged defect. MCSB also came forth with an eyewitness account that attributes the fall to the child running on the steps of the bleachers. To overcome the well-supported summary judgment motion, the Masons had to come forth with factual support to show that they would be able to satisfy their evidentiary burden at trial. The affidavits of Philips and Campbell do not offer the required factual support for the Masons' claims or show that there is a genuine issue for trial.
Other than the allegations in their petition, the Masons offered affidavits by Philips and Campbell who either did not recall seeing any traction tape on the steps or noticed no such tape on the steps. The alleged absence of traction tape and the fact that Brelynn fell through the rails do not alone suffice to show that the Masons will be able to meet the evidentiary burden of proving that Brelynn's fall and resulting injuries were caused by a defect that created an unreasonable risk of harm.
Nothing in the record reveals anything about the bleachers, such as whether they were constructed from metal or wood, whether there was tape on the steps in other areas of the bleachers, or how the guardrails were positioned. No evidence indicates that the bleachers were anything other than`the typical bleachers found in high school stadiums. There is no indication that the steps of the bleachers were slippery or that other similar incidents occurred due to lack of traction on the steps. There is no evidence that the school failed to maintain the bleachers or failed to discover some defective condition. The Masons have come forth with no evidence, such as expert testimony, to show that the bleachers were improperly designed, constructed or maintained. Based on this record we cannot say that the absence of traction tape, as alleged by the Masons, was either unsafe or a defect that created an unreasonable risk of harm. Nor can we find that the guardrails have some defect that poses an unreasonable risk of harm simply because of the accident that occurred. *383 That a child fell down the steps of the stadium while attending a game and that the individuals at the game with her observed no traction tape on the steps are not facts from which we can infer constructive notice of a defect on the part of MCSB.
While the affidavits show a dispute of fact as to whether the accident happened while Brelynn was running down the steps or walking down the steps, this factual dispute is not germane to the existence of a defect or notice on the part of MCSB. Falls can occur when running or walking and happen for reasons other than lack of traction on the surface. Because the Masons have not produced factual support to show that they will be able to meet their evidentiary burden at trial, we find there is no genuine issue of material fact and that MCSB is entitled to summary judgment as a matter of law.

CONCLUSION
For the reasons explained, we affirm the trial court's judgment. Costs of appeal are assessed against the appellants.
AFFIRMED.
NOTES
[1] We note that the Masons' claims against CYAS, the alleged sponsor of the pee-wee football game, have not yet been dismissed. Nor have the cross-claims between CYAS and MCSB been dismissed.