Judgment rendered September 21, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,750-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LACHELLE FREEMAN                              Plaintiff-Appellant

versus

WEST CARROLL PARISH                          Defendant-Appellee
POLICE JURY

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 31792

Honorable Stephen Gayle Dean, Judge

* * * * *

ANTHONY J. BRUSCATO                          Counsel for Appellant

GOLD, WEEMS, BRUSER,                         Counsel for Appellee
SUES & RUNDELL
By: Steven M. Oxenhandler
    Michael John O'Shee
    Martha Rundell Crenshaw

* * * * *

Before STONE, COX, and THOMPSON, JJ.

STONE, J., dissents with written reasons.

**COX, J.**

This civil suit arises from the Fifth Judicial District Court for the Parish of West Carroll, Louisiana. Plaintiff, Lachelle Freeman ("Freeman"), appeals a judgment granting a motion for summary judgment by Defendant, West Carroll Parish Police Jury (the "Police Jury"), dismissing Freeman's claims with prejudice. For the foregoing reasons, we affirm the trial court's decision.

## FACTS & PROCEDURAL HISTORY

On December 26, 2019, Freeman filed a petition for damages against the Police Jury. Freeman alleged that on August 14, 2019, she went to the West Carroll Parish Courthouse in Oak Grove, Louisiana, to retrieve documents from the district attorney's office located on the second floor of the building. Freeman provided that after she left the office with her paperwork, she proceeded to exit the building; however, as she made her way toward the exit, Freeman claimed that she did not see or realize that there were steps ahead of her and subsequently fell down the interior steps, injuring her right shoulder. Freeman later acknowledged in her affidavit that leading up to and at the time of the incident, she was looking down at her paperwork as she walked. Freeman stated in her deposition that although she was reviewing her paperwork, she was also able to "look [sic] at the floor using [her] peripheral vision."

Freeman claimed that because "the color of the steps [was] close to the same . . . color of the rest of the floor and the walls, so the steps kind of blend into the floor," she thought she was walking on a flat surface. She alleged that:

> [I]f there had been anything conspicuous on the floor to catch my eye, I would have seen it[.] But there was nothing conspicuous to catch my eye and tell me that there were steps or anything to watch out for. There was no warning cone and no railing. If there had been a warning cone or a railing sticking up, I would have seen this with my peripheral vision and known I needed to watch out for something ahead of me. If the edges of the stairs had been marked with contrasting nonskid material or just painted a contrasting color that made them stand out from the rest of the floor. I would have seen the contrasting color and known to look to see what the color represented, and I would have seen the stairs.

In response to Freeman's petition, the Police Jury generally denied all allegations of liability for any and all damages related to Freeman's injuries. In addition to numerous affirmative defenses, the Police Jury asserted that Freeman could not show that the stairs created an unreasonable risk of harm or that the Police Jury had actual or constructive knowledge of the alleged condition of the stairs and ramp. Notably, the Police jury further asserted that Freeman's damages occurred solely through her own negligence, fault, and inattentiveness, as she admitted to being distracted while walking toward the stairs and ramp. In addressing Freeman's assertion that the absence of a handrail between the stairs and ramp created a hazardous condition that contributed to her injury, the Police Jury averred that Freeman would have fallen regardless of the design of the ramp or the handrail because she was distracted while walking.

Following discovery, in which video surveillance and photographs of the accident were produced, Freeman filed a motion for partial summary judgment on February 9, 2021. Freeman acknowledged that although she was distracted at the time of the accident, the Police Jury, which maintained custody over the condition of the stairs and ramp, was partially liable for her damages. In relying on the expert opinion of Foy Gadberry ("Gadberry"), a

2

licensed civil engineer, who examined the surveillance video of the incident, Freeman asserted that the dual stair/ramp walkway was not constructed in accordance with the applicable building code provisions because no handrail was installed to separate the stairs from the ramp. Freeman asserted that the absence of a handrail, in addition to other characteristics of the dual stair/ramp walkway, created a hazardous condition that contributed to her injury, for which the Police Jury is liable.

The Police Jury opposed Freeman's motion for partial summary judgment, and filed its own motion for summary judgment, arguing that Freeman could not establish the essential elements of her claim. The Police Jury reiterated that Freeman's damages were caused solely by her own inattentiveness, to which Freeman admitted and were captured on the surveillance video. It argued that even if the absence of the handrail created a hazardous condition, it was open and obvious primarily because Freeman previously used the steps, without incident, moments before she fell, and that Freeman could have walked down the steps without incident had she exercised due care. Moreover, the Police Jury argued that there was no evidence that it had any notice, either actual or constructive, that the dual stair/ramp walkway was hazardous which was supported by the absence of any record of a complaint or notice of a problem or potential problem regarding the dual stair/ramp walkway since either was installed.

In opposition, Freeman primarily reiterated her previous assertion that the Police Jury was partially responsible for her injuries. Freeman argued that even if her initial stumble was due entirely to her inattentiveness, her subsequent fall was due, in part, to the absence of an Americans with

3

Disabilities Act ("ADA") mandated handrail.[1] Freeman contended that if the handrail had been present, or alternatively, a sign had been placed in the area drawing attention to the presence of the stairs, then she should have either been able to catch herself from falling or noticed the steps before she approached them. Freeman re-asserted that the Police Jury should be found partially liable for her injuries because the evidence supports the conclusion that her injury resulted from a "combination of her own negligence [and the] defendant's decision to construct a staircase/ramp that is not compliant with the Louisiana Building Code and which is otherwise unsafe."

Following arguments, the trial court signed a written judgment, granting summary judgment in favor of the Police Jury, dismissing Freeman's claims with prejudice. Freeman now appeals.

### DISCUSSION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880. Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Id.*; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Harris v. City of Shreveport*, 53,101 (La. App. 2 Cir. 4/22/20), 295 So. 3d 978; *Bess v. Graphic Packaging Int'l, Inc.*, 54,111 (La. App. 2 Cir. 11/17/21), 331 So. 3d 490.

---

[1] Freeman alleged that her fall was also caused by other factors, including the "presence of a two-inch rim in the middle of a walking surface" as a result of the ramp.

La. C.C.P. art. 966(D)(1) addresses the burden of proof for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute.

A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Harris, supra*; *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Harris, supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

La. C.C. art. 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of

5

persons for whom we are answerable, or of the things which we have in our custody." Further, La. C.C. art. 2317.1 provides that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

To recover for damages caused by a defective thing, a plaintiff must prove that the thing was in defendant's custody, that the thing contained a defect, that this defective condition caused damage, and that defendant knew or should have known of the defect. La. C.C. art. 2317.1; *Harris*, *supra*.

Public entities are responsible for damages caused by the condition of a building within their care and custody. La. R.S. 9:2800. To recover for damages due to a defective thing, a plaintiff must prove: (1) the thing which caused the damage was in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of plaintiff's harm. *Id.; Ricks v. City of Shreveport*, 42,675 (La. App. 2 Cir. 10/24/07), 968 So. 2d 863. Failure to meet any one statutory element will defeat a negligence claim against a public entity. *Id.*

A "defect" in a thing, for which one having custody of the thing may be liable for damages caused, is a condition or imperfection that poses an unreasonable risk of injury to persons exercising ordinary care and prudence. *Gauthier v. Foster Homes LLC*, 53,143 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1206. The determination of whether a defect presents an unreasonable risk of harm is a matter wed to the facts and must be determined in light of

6

facts and surrounding circumstances of each particular case. *Id*. To be liable for damages caused by a defect, the defect must be dangerous or calculated to cause injury. *Harris*, *supra*. Moreover, not every imperfection or irregularity is a defect for purposes of imposing liability. *Mason v. Monroe City School Bd*., 43,595 (La. App. 2 Cir. 9/17/08), 996 So. 2d 377.

To determine whether a condition is unreasonably dangerous, courts have adopted a risk-utility balancing test, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. *Harris, supra*; *Stevens v. City of Shreveport*, 49,437 (La. App. 2 Cir. 11/19/14), 152 So. 3d 1071, *writ denied*, 15-0197 (La. 4/17/15), 168 So. 3d 399, *cert. denied*, --- U.S. ---, 136 S. Ct. 154, 193 L. Ed. 2d 114 (2015). However, defendants generally have no duty to protect against an open and obvious hazard. *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851; *Harris, supra*. If the facts of a particular case show that the complained-of condition should have been obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Id*.; *Gauthier*, *supra*.

Before a municipality can be held liable for injuries resulting from a defect in the condition of a thing in its custody, the municipality must have had actual or constructive notice of the particular defect that gave rise to the injury. *Id*.; *Stevens*, *supra*. Actual notice is knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities. *Id*. Constructive notice is defined by La. R.S. 9:2800 as the existence of facts which imply actual knowledge. To establish constructive notice, plaintiffs must prove that the

7

defect causing the injury existed over a sufficient length of time to establish that reasonable diligence would have led to its discovery and repair. *Id.*; *Stevens*, *supra*. Accordingly, a plaintiff must make a positive showing of the existence of the condition prior to the fall. *Id.*

In her related assignment of errors on appeal, Freeman primarily asserts that the trial court erred in granting the Police Jury's motion for summary judgment because deficiencies in the dual stair/ramp walkway created a hazardous condition that contributed to her fall and subsequent injuries. Freeman argues that the trial court's ruling should be reversed because she established the essential elements of her claim; notably, that she provided sufficient evidence to establish the following conclusions:

> 1. The Police [Jury] had custody of the dual stair/ramp;
> 2. The dual stair/ramp was defective because of the lack of a handrail and other characteristics that, separately or in combination, created an unreasonable risk of harm;
> 3. The Police Jury had actual or constructive knowledge of the lack of handrail and other characteristics of the dual stair/ramp in advance of her injury to have a reasonable opportunity to remedy any defective condition; and;
> 4. The defective and unreasonably dangerous condition of the dual stair/ramp was a cause-in-fact of her injuries.

First, it is uncontested that the Police Jury maintained custody over the dual stair/ramp walkway. However, Freeman maintains that, as of the date of her accident, the dual stair/ramp walkway violated several code provisions of the National Fire Protection Association Code 101 ("NFPA 101") and the International Building Code ("IBC"), which she argues has been incorporated into the Louisiana Building Code ("LBC"), and the ADA. She contends that the absence of the handrail, in violation of these provisions, created a hazardous condition that ultimately contributed to her injury.

8

Specifically, Freeman cites Gadberry's report which provided the following:

> The code provision governing staircases in older buildings is NFPA 101, Section 7.2.2.4.2, exception number 1. This code provision requires staircases in public buildings to have handrails spaced at 44 inches. The staircase depicted in Ms. Freeman's video does not have a stair rail in the proper location and is constructed in violation of this code provision.
>
> The code provisions governing handicap ramps are NFPA 101, Section 7.2.2.4.2. and ADA, 1994, Section 4.8. The code provisions require all handicap ramps to have rails. The handicap ramp which is depicted in Ms. Freeman's video does not have a rail [and] is constructed in violation of these code provisions.

We note that, in her brief, Freeman conceded that the absence of the handrail was an open and obvious condition. However, Freeman alternatively asserts that the dual stair/ramp walkway possessed other characteristics which rendered the area hazardous. Specifically, Freeman notes that the two-inch rim located on the right side of the ramp, coupled with the absence of a handrail, made the ramp a more dangerous location for a person using the stairs. Freeman argues that as she began to fall, the rim prevented her from "bringing her left foot forward to prevent or break her fall." She contends that if the ramp had been constructed in accordance with the aforementioned code provisions, she could have used the handrail to prevent herself from falling. We disagree.

We first note that the presence of the two-inch rim, as evidenced in Gadberry's report, was a mandatory requirement for the ramp in accordance with ADA standards. Next, in addressing Freeman's contention that the absence of a handrail rendered the ramp unreasonably dangerous, primarily because it violated ADA provisions, we note that compliance with building codes is only one factor to be considered in determining premise liability.

9

*Primeaux v. Best Western Plus Houma Inn*, 18-0841 (La. App. 1 Cir. 2/28/19), 274 So. 3d 20. Moreover, evidence that a condition violates an applicable code does not necessarily make the thing unreasonably dangerous. *Id.*; *Laffitte v. D&J Commercial Props., LLC*, 52,823 (La. App. 2 Cir. 8/14/19), 278 So. 3d 460, *writ denied*, 19-01476 (La. 11/12/19), 282 So. 3d 228.

Assuming *arguendo* that the lack of a handrail, in violation of ADA provisions, created an unreasonably dangerous condition, it cannot be said that its absence caused or contributed to Freeman's fall. Rather, the record supports that Freeman fell after she missed the first step as she walked because she was engrossed in her paperwork and failed to exercise reasonable care in looking where she was walking. This is further supported by Freeman's concession during her deposition that she was inattentive at the time of the incident. Specifically, Freeman testified that she was "reading [her] paper to make sure it was what [she] needed, and that's the only thing [she] was [sic] focus[ed] on was that form." She stated that she did not see anything around her while walking and that she held her paper right in front of her face. Importantly, Freeman admitted that if she was looking up, she would have seen the ramp and stairs in front of her.

Likewise, the trial court determined that:

There is no dispute that the plaintiff fell and was injured while inside the courthouse. There is no dispute that the courthouse is owned and controlled by the defendant. There is likewise no dispute that neither the ramp nor the steps have any hand railings on or near them.

What is disputed is whether the lack of handrails on either the steps or the ramp caused or contributed to plaintiff's accident.

It is clear from viewing the video that the unfortunate accident was caused solely by plaintiff's lack of attention to where she

was walking and her failure to see what she should have seen. Having traversed the exact location only minutes before her fall, plaintiff was fully aware of the existence and location of both the steps and the ramp. Instead of paying attention to her whereabouts and the hallway in which she was walking, plaintiff allowed herself to be distracted by reading papers as she walked. The lack of handrails at or near the [s]teps and the [r]amp played no part in the accident.

We agree with the trial court and find that, as established from Freeman's deposition and the surveillance video, the condition of the dual stair/ramp walkway was open and obvious and Freeman would have seen that no handrail was present if she paid even cursory attention to the walkway in front of her.

Freeman further argues that there are still other characteristics that made the dual stair/ramp walkway unreasonably dangerous. Specifically, she contends that the stairs' "camouflaged" appearance prevented her from recognizing a change in elevation to properly and safely descend the stairs. Moreover, she asserts that the lack of nosing and contrasting color on the steps, which would normally announce that there was a change in elevation from the walkway to the stairs, created an unreasonable risk of harm. In her affidavit, Freeman stated:

As I came out of the DA's office, I was looking down at the paper and also looking at the floor using my peripheral vision. If there had been anything conspicuous on the floor to catch my eye, I would have seen it. . . if there had been a warning cone or a railing. . . I would have seen this with my peripheral vision. . . if the edge of the stairs had been marked. . . I would have seen the contrasting color. . . but there was nothing to catch my eye.

However, we note that Gadberry's report indicated that, "[t]here is no code provision which requires conspicuous nosing on the steps of public staircases in older buildings. The staircase involved in Ms. Freeman's injury

11

does not have a conspicuous nosing. The lack of conspicuous nosing does not render the staircase in this building in violation of any code provision."

Moreover, the report only provides a conclusory statement that the presence of nosing with a contrasting color would render the stairs significantly less hazardous. The report does not indicate that Freeman, even while distracted by her paperwork, would have seen any of the aforementioned markings, alerting her to the presence of the stairs. Freeman speculates that if there had either been markings on the floor, a sign, or a handrail present, she would not have fallen or could have stopped herself from falling.[2] However, it takes more than mere argument of a possibility to establish a genuine issue of fact. *Harris*, *supra*. Given that the condition of the dual stair/ramp walkway was open and obvious, and that Freeman was distracted at the time of the incident, we find that she will be unable to meet her burden of proving that the stairs and ramp were unreasonably dangerous.

We further find that Freeman has not established that the Police Jury had either actual or constructive knowledge that the absence of the handrail created an unreasonable risk of injury. The Police Jury notes that the stairs were installed in the courthouse in 1962 through 1963, but the ramp was not installed until 1996. It argues that it did not have notice of the alleged defect. In relying on Angela Griffis'[3] ("Griffis") affidavit, the Police Jury asserts that it had not received any complaints about any problems or potential problems concerning either the stairs or the ramp. They note that the steps and ramp are used regularly and that several courthouse employees

---

[2] Our review of the video shows that the path in which Freeman walked indicated that it was more than likely she would have run into a handrail had it been present.

[3] Griffis is the secretary and treasurer for the Police Jury and has served in that capacity since January 1, 2016.

and visitors have utilized the stairs and ramp without incident. In contrast, Freeman generally argues that Griffis' affidavit is conclusory and does not exclude the possibility that every complaint would result in a written record, which would then be stored permanently in the Police Jury records.

We note that under La. C.C. art. 2317.1, the issue of knowledge does not automatically preclude or prohibit disposition by summary judgment. *Laffitte, supra.* However, given that the absence of the handrail, as Freeman conceded, was open and obvious, and that no complaints had ever been lodged about it, despite the numerous people who traverse through the area, this Court cannot find that the Police Jury was aware of any defects relating to the dual stair/ramp walkway.

In our *de novo* review of the record, we find that this is not a case "involving a single deviation that might not be noticeable by a reasonably observant" person. Freeman's deposition testimony indicates that she fell as she exited the courthouse due to her inattentiveness to the walkway ahead of her. Because she was looking at her paperwork, she did not see the open and obvious condition of the dual stair/ramp walkway. Accordingly, we find no error in the trial court's granting of summary judgment in favor of the Police Jury and in denying Freeman's motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, the judgment granting the motion for summary judgment in favor of the Police Jury is affirmed. Costs of this appeal are assessed to Freeman.

**AFFIRMED.**

13

**STONE, J., dissenting**

The fact that a hazard is open and obvious is not necessarily dispositive in every case. Usually, if a hazard is open and obvious, that fact will preclude liability. However, in Campbell v. Louisiana Dep't of Transp. & Dev., 94-1052 (La. 1/17/95), 648 So. 2d 898, the Louisiana Supreme Court held that a bridge without guardrails was unreasonably dangerous when a driver fell asleep on the bridge and crashed into a bridge abutment. The court acknowledged that the risk of running out of the lane and into a bridge abutment was open and obvious, but nonetheless held that the DOTD had the duty to protect drivers who veer out of lane of travel on the bridge, and that the DOTD breached that obligation by not having guardrails. Similarly, in Gray v. State Farm Ins. Co., 53,554 (La. App. 2 Cir. 1/13/21), 310 So. 3d 768, writ denied, 2021-00242 (La. 4/7/21), 313 So. 3d 978, this Court held that the DOTD breached its duty to motorists in allowing a brick mailbox to remain on the shoulder of the highway, despite the openness and obviousness of the mailbox. These cases show that instrumentalities the use of which carry a high degree of inherent danger can be unreasonably dangerous even if the hazards are open and obvious.

The use of a stairwell carries a higher degree of inherent danger. The likelihood and gravity of a fall down the stairs is relatively high. A person can lose balance on a stairwell despite exercising proper care. That is particularly true of people with impaired balance, such as many of the elderly. The police jury has a duty to protect users of its stairwell by providing a handrail by which the user may steady herself. The absence of a handrail breached that duty and precluded the plaintiff from being able to stabilize herself with her hand before she fell. Furthermore, the two-inch rim

separating the ramp from the stairwell tripped the plaintiff; it prevented her from catching herself with her foot before she fell. The two-inch rim should have been incorporated into the base of a handrail. This would have given her the opportunity to regain her balance.

The majority's assertion that the police jury did not know about the lack of a handrail on its staircase is preposterous. The stairwell was built in 1995 and apparently never had a handrail. Thus, on summary judgment, the court must infer that the police jury had approximately 24 years to discover and remedy the lack of a handrail.

For these reasons, I dissent.