NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-655

BOBBY ABSHIRE, ET AL.

VERSUS

CONTINENTAL CASUALTY COMPANY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84,656
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED.

Nicholas J. Sigur
Attorney at Law
106 Beau Coteau Parkway
Broussard, LA 70518
(337) 837-9700
Counsel for Defendant/Appellee:
American Legion Hospital

**C. Wm. Bradley, Jr.**
**Richard S. Crisler**
**Natalie J. Dekaris**
**Bradley, Murchison, Kelly & Shea, LLC**
**1100 Poydras Street, Suite 2700**
**New Orleans, LA 70163-2700**
**(504) 596-6300**
**Counsel for Defendant/Appellee:**
      **Roger D. Hector, M.D.**

**R. Scott Iles**
**Attorney at Law**
**P. O. Box 3385**
**Lafayette, LA 70502**
**(337) 234-8800**
**Counsel for Plaintiffs/Appellants:**
      **Bobby Abshire**
      **Danny Abshire**
      **Janet Abshire**
      **Hubert Abshire, Jr.**
      **Billy Abshire**

**DECUIR, Judge.**

Bobby Abshire and his siblings, Janet A. Richard, Hubert Abshire, Billy Abshire, and Danny Abshire, filed this wrongful death and survival action against Dr. Roger Hector, Continental Casualty Company, and American Legion Hospital, alleging medical malpractice which resulted in the death of their mother, Jeanette Abshire. After a jury trial, judgment was rendered in favor of the defendants, and the Abshires' suit was dismissed. The Abshire family has appealed, alleging trial court error in granting a directed verdict in favor of the hospital and in failing to grant a judgment notwithstanding the verdict or a new trial in favor of the plaintiffs. The Abshire family also contends the jury erred in finding no liability on the part of Dr. Hector. For the following reasons, we affirm.

The record before us shows that in May of 2004, Jeanette Abshire was sixty-nine years old, had previously suffered a stroke which affected her speech and her gait, weighed ninety-three pounds, and was hypertensive. Mrs. Abshire was brought to the Crowley American Legion Hospital on May 16, 2004 with symptoms of vomiting and recent weight loss of ten to fifteen pounds. After diagnosis of an abdominal obstruction, Mrs. Abshire was admitted into the hospital and scheduled for surgery. Dr. Roger Hector, an anesthesiologist, was asked to place a central line in the subclavian vein to be used for the intravenous administration of fluids. After the central line was in place, Dr. Hector ordered an x-ray to check for proper placement of the line, which was confirmed. Also, Dr. Hector did not note anything unusual about the pulsatile flow or the blood color which would have alerted him to an improper placement of the line. Other medical personnel then used the central line several hours later for the administration of fluids prior to surgery.

When Mrs. Abshire was brought into the surgical suite on the evening of May 18, 2004, the surgeon discovered the central line had been placed in an artery rather than a vein. Mrs. Abshire showed signs of decreased pulse and blood pressure in the right arm, and the medical records indicate she may have had some mental deterioration just prior to surgery. The surgeon, Dr. Ben Sabbaghian, started a new central line in the correct location and proceeded with the planned abdominal surgery to correct the blocked intestine. Following the surgery, Mrs. Abshire did not regain consciousness. She was transferred to Our Lady of Lourdes Hospital in Lafayette for removal of the arterial central line and repair of the artery. Neurological and cardiovascular assessments showed that Mrs. Abshire had probably suffered a stroke. A gastroenterologist inserted a feeding tube, and in the course of his treatment, he discovered that she had a mass in the esophagus which was later diagnosed as advanced esophageal cancer. She also had an ulcer and a mass in one kidney.

Even with artificial life support and nutritional assistance, Mrs. Abshire continued to deteriorate. She died on May 29, 2004. Multiple causes of death were listed in the medical record and include: cerebrovascular accident, right brachial artery thrombosis, gastric ulcer, hypertension, cerebrovascular disease, intrahepatic cholestasis, and seizures.

Mrs. Abshire's children filed suit against Dr. Hector, alleging that Dr. Hector's failure to immediately discover that the central line was improperly placed in an artery rather than a vein was a violation of the standard of care and ultimately caused Mrs. Abshire's death. Their claim against American Legion Hospital states that the nursing staff also violated the applicable standard of care when the nurses did not discover the incorrect line placement.

Following lengthy pretrial proceedings, the case was tried by a jury in July of 2009. At the close of the plaintiffs' case, the trial court directed a verdict in favor of American Legion Hospital and explained to the jury simply that "you will not be called upon to decide anything involving American Legion Hospital." The jury deliberated only on the fault of Dr. Hector and concluded he was not liable for Mrs. Abshire's death. The trial court refused to grant a judgment notwithstanding the verdict.

The evidence in the record before us depicts Mrs. Abshire as a very sick patient at the time of her hospital admission. Although she had been living independently, she arrived at the hospital dehydrated, nauseated, unable to communicate easily, and having recently experienced significant unexplained weight loss. The central line was to be used primarily for nourishment purposes. It is undisputed by the medical expert witnesses, including the plaintiffs' expert witnesses, that the misplacement of a central venous catheter in an artery is not a breach of the standard of care. The alleged malpractice in this case is the failure to timely detect the misplacement. Mrs. Abshire, however, may have had certain symptoms which hid the misplacement from the medical personnel involved in her care.

The parties agree that the standard of care for a physician who places a central line in the subclavian vessel requires that he check for pulsatile blood flow, observe the color of the patient's blood, and confirm proper placement with an x-ray. The expert testimony explained these steps as follows: Blood flow helps to determine proper catheter placement because of the difference in arterial versus venous blood pressure. Ordinarily, when a needle is inserted in an artery near the heart, blood is expelled with a strong pressure. There are situations, however, when pulsatile blood flow from an artery may be weak, such as when the patient

3

has low blood pressure or when the catheter needle is inserted in the vessel wall. The color of the blood also helps determine proper placement because arterial blood is freshly oxygenated and is bright red; venous blood returning to the heart is depleted of oxygen and is darker than arterial blood. Nevertheless, a patient whose oxygenation level is low will not have bright red arterial blood. Finally, the expert testimony indicated that x-ray films can confirm that a catheter was properly placed in a blood vessel, but the x-ray cannot show whether that vessel is an artery or a vein.

Dr. Hector testified on his own behalf. He stated that he checked Mrs. Abshire's blood color and pulsatile blood flow and saw no signs of improper placement of the catheter. He also ordered an x-ray which was reviewed by both the emergency room physician and a radiologist. Neither doctor noted any signs of improper placement. Dr. Hector thought Mrs. Abshire's physical condition may have been affected by dehydration, renal insufficiency, low or varying blood pressures throughout the day, or even her history of smoking ten years prior to this hospitalization. Dr. Hector and the other experts who testified in this case explained that Mrs. Abshire's various physical ailments may have concealed the signs of catheter misplacement. After hearing this evidence, the jury determined that Dr. Hector looked for the signs of misplacement, detected none, and hence did not violate the applicable standard of care. Regarding the liability of the hospital, the trial court heard no evidence indicating the nursing staff acted in violation of the standard of care and granted a directed verdict in its favor.

Louisiana law provides for the manifest error standard of review of factual determinations in medical malpractice cases:

> An appellate court, in reviewing a jury's factual conclusions, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion,

4

and the finding must be clearly wrong. *Kaiser v. Hardin*, 06-2092, pp. 11-12 (La.4/11/07), 953 So.2d 802, 810; *Guillory v. Insurance Co. of North America*, 96-1084, p. 5 (La.4/8/97), 692 So.2d 1029, 1032. This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Guillory*, 09-0075 at p. 16, 16 So.3d at 1118; *Kaiser*, 06-2092 at p. 12, 953 So.2d at 810. The issue to be resolved on review is not whether the jury was right or wrong, but whether the jury's fact finding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

*McGolthlin v. Christus St. Patrick Hosp.*, 10-2775, pp.16-17 (La. 7/1/11), 65 So.3d 1218, 1231.

Furthermore, upon review, the appellate court must consider whether the plaintiff has met his three-prong burden of proof:

In a medical malpractice case, the plaintiff has the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

La. R.S. 9:2794(A).

Implicit in the trial court's judgment in favor of defendants is that plaintiffs did not prove that any of the defendants breached the applicable standard of care or that any breach of the standard of care by the defendants caused the injury. Thus, the issue is whether a reasonable factual basis exists in the record for either of these findings.

*Salvant v. State*, 05-2126, p. 6 (La. 7/6/06) 935 So.2d 646, 651.

After reviewing the record before us, we find no manifest error in the verdict reached by the jury. The explanations offered by the expert witnesses as to why Dr. Hector did not detect signs of a misplaced catheter are reasonably supported by the evidence, and the jury was not clearly wrong in finding no breach of the standard of care. We also conclude the trial court appropriately granted American Legion Hospital's motion for directed verdict, as we find the plaintiffs failed to meet their burden of proving malpractice on the part of the hospital nursing staff. The plaintiffs did not object at trial to the language used by the court to inform the jury of this action, and we find no error in the brief explanatory comment made by the trial court, stating simply that the jury will not be called upon to decide anything with regard to the hospital. Likewise, the trial court did not err in denying the plaintiffs' motion for judgment notwithstanding the verdict and/or new trial.

For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.

6