STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0942

DIONNE CHRISTY AND DEMOND CHATMAN

VERSUS

ATLANTIC SPECIALTY INSURANCE COMPANY, LIONEL FRANKLIN, JR.,
AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

**Judgment Rendered:** MAR 0 3 2022

* * * * * *

On appeal from the
Twenty-Third Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Docket Number 124,956

Honorable Steven Tureau, Judge Presiding

* * * * * *

Christopher W. Deagano           Counsel for Plaintiffs/Appellants
Spencer H. Calahan              Dionne Christy and Demond
Parker A. Deagano               Chatman
Baton Rouge, LA
Marcus J. Plaisance
Mark D. Plaisance
Prairieville, LA


Ashley M. Caruso                Counsel for Defendants/Appellees
Mary G. Erlingson               Atlantic Specialty Insurance
Judson G. Banks                 Company, Lionel Franklin, Jr., and
Lee J. Ledet                    the City of Donaldsonville
Baton Rouge LA

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Holdridge J, agrees in part, dissents in part

**GUIDRY, J.**

The plaintiffs, Dionne Christy and Demond Chatman, appeal awards for damages following a bench trial. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

This case arises from an automobile accident, which occurred on April 20, 2018, when Lionel Franklin, Jr. rear-ended a vehicle being operated by Dionne Christy in which Demond Chatman was a passenger.[1] The case went to a bench trial on February 25, 2021, and the trial court subsequently awarded general and special damages to the plaintiffs. A judgment was signed on April 1, 2021. This appeal followed regarding the plaintiffs' awards for general damages (past and future) and future medical expenses.

### ASSIGNMENTS OF ERROR

1. Unrefuted evidence, in the form of medical records and testimony from her treating physicians, proves Dionne Christy suffered a disc bulge or herniated disc for which she sought treatment over nearly three years between the April 2018 collision and the February 2021 trial. Likewise, unrefuted evidence, in the form of medical records, testimony from Ms. Christy's treating physician, and a life care plan proves she will require future medical treatment at a cost of $89,777.15. The trial court awards of $15,000 for past general damages, $5,000 for future general damages, and $10,000 for future medical expenses are abusively inadequate and fail to make Ms. Christy whole.

2. Unrefuted evidence, in the form of medical records and testimony from his treating physicians, proves Demond Chatman suffered cervical facet syndrome for which he sought treatment over a period of nearly three years between the date of collision and the trial. Similarly, unrefuted evidence, in the form of medical records, testimony from Mr. Chatman's treating physician, and a life care plan, proves he will require future medical treatment, at a minimum, costing $86,966.25. The trial court awards of $5,000 for past general damages, $2,500 for future general damages, and $5,000 for future medical expenses are abusively inadequate and fail to make Mr. Chatman whole.

---

[1] At the time of the accident, Mr. Franklin was in the course and scope of his employment with the City of Donaldsonville, which is insured by Atlantic Specialty Insurance Company. The plaintiffs brought suit against Mr. Franklin, the City of Donaldsonville, and Atlantic Specialty Insurance Company.

## STANDARD OF REVIEW

An appellate court's role in reviewing a general damages award, one which may not be fixed with pecuniary exactitude, is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Guillory v. Lee, 09-0075, pp. 14-15 (La. 6/26/09), 16 So. 3d 1104, 1117. Vast discretion is accorded the factfinder in fixing general damage awards.[2] Thus, an appellate court should rarely disturb an award of general damages. Kaiser v. Hardin, 06-2092, p. 9 (La. 4/11/07), 953 So. 2d 802, 809 (*per curiam*).

In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. Green v. K-Mart Corp., 03-2495, p. 3 (La. 5/25/2004), 874 So. 2d 838, 842.

Likewise, when reviewing a jury's factual conclusions with regard to special damages,[3] an appellate court must engage in the aforementioned two-step process, based on the record as a whole. In order to disturb the factfinder's award of special damages, there must be no factual basis for the factfinder's determination and the finding must be clearly wrong. See McDowell v. Diggs, 17-0755, p. 9 (La. App. 1st Cir. 10/3/18), 264 So. 3d 489, 496, citing Kaiser, 06-2092 at p. 12, 953 So. 2d at 810. In accordance with well-established law, much discretion is left to the judge or jury in its assessment of quantum, both general and special damages. Guillory, 09-0075 at p. 14, 16 So. 3d at 1116.

---

[2] Louisiana Civil Code article 2324.1 states, "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."

[3] Special damages have a "ready market value," that supposedly can be determined with relative certainty. See Wainwright v. Fontenot, 00-0492, p. 5 (La. 10/17/00), 774 So. 2d 70, 74. Future medical expenses are an item of special damages. Hicks v. USAA General Indemnity Company, 19-0552, p. 18 (La. App. 1st Cir. 3/25/21), 323 So. 3d 1, 22, writ granted, 21-00840 (La. 11/17/21), 327 So. 3d 508.

DISCUSSION

In the present matter, the trial court awarded Ms. Christy $31,844.06 for past medical expenses, $15,000.00 for past general damages, $10,000.00 for future medical expenses, and $5,000.00 for future general damages. Mr. Chatman was awarded $38,330.77 for past medical expenses, $5,000.00 for past general damages, $5,000.00 for future medical expenses, and $2,500.00 for future general damages.[4] The trial court heard testimony from a number of witnesses.[5]

**Testimony of Ms. Christy**

Ms. Christy stated that she first felt pain the day after the accident—"a horrible headache" and "just body started hurting." Following the accident, Ms. Christy went to the hospital for assessment, and shortly after the incident, went to Dr. Richards for chiropractic care. She was referred to Dr. Graham after an MRI revealed a disc bulge. When questioned about her pain, Ms. Christy first affirmed that she was still having problems with her lower back. She then stated that she has problems with her whole back and neck. She then explained, in regards to her back, that she has mid-back pain. Ms. Christy stated that everything bothers her and that the pain affects her life.

On cross-examination, Ms. Christy admitted, after first stating that she does not travel, that she does travel for fun, even going parasailing. She agreed that she completed/graduated from two school programs. Ms. Christy stated that she had been in no recent accidents, and had no previous treatment for her neck or back. She admitted that she received no restrictions or limitations from a doctor. In

---

[4] Both Ms. Christy and Mr. Chatman were awarded the full amount sought for their past medical expenses, which they do not appeal.

[5] Jason Jones was offered by the defendants as an expert in the field of osteopractic physical therapy. However, Mr. Jones was only allowed to testify as to issues within the field of physical therapy. Where Mr. Jones testified and opined beyond the scope of physical therapy, his testimony and opinions were not considered by the trial court. Other evidence presented to the trial court included the certified medical records of Ms. Christy and Mr. Chatman, life care reports for Ms. Christy and Mr. Chatman, and photographs of Ms. Christy's and Mr. Franklin's vehicles.

addition, Ms. Christy agreed, after the accident, that she noticed only a dent in the middle of her car's bumper. Ms. Christy also admitted that there was a "break" in her care with Dr. Graham, as she was doing well at the time.

**Testimony of Mr. Chatman**

Mr. Chatman testified that he had been involved in a few accidents prior to April 20, 2018, having received neck and back treatment following a 2014 accident where he was rear-ended by an 18-wheeler. Mr. Chatman explained that he sought treatment at the hospital on the day of the April 2018 accident after receiving his haircut; he felt a lot of pain in his neck.

Mr. Chatman was seen by Dr. Richards for chiropractic care and later referred to Dr. Graham for pain management. Mr. Chatman stated that he still has neck pain. On cross examination, Mr. Chatman admitted that as a result of the 2014 accident he complained of neck pain. He also admitted he ran a red light in January of 2018 and was subsequently "T-boned" by a vehicle. Mr. Chatman testified that he received no limitations from a doctor, and was able to work and go out on weekends with friends after the April 2018 accident.

**Testimony of Dr. Micah Richards**

Dr. Richards, a chiropractor, first saw Ms. Christy on April 24, 2018. At that time, Ms. Christy complained of neck, back, and shoulder pain. Ms. Christy was last seen by Dr. Richards on February 18, 2020. After treatment, according to Dr. Richards, Ms. Christy's range of motion had improved, although she continued to have headaches and neck and thoracic pain. Dr. Richards testified that Ms. Christy's lumbar spine responded well to treatment.

Dr. Richards also first saw Mr. Chatman on April 24, 2018. At that time, Mr. Chatman complained of back pain, neck pain, and pain in his left hand. Mr. Chatman received regular chiropractic care from Dr. Richards, and was last seen by Dr. Richards on December 3, 2020.

## Testimony of Dr. Sean Graham

Dr. Graham, treating physician and pain management doctor, testified as follows. He first saw Ms. Christy on June 18, 2018. Ms. Christy complained of neck pain and pain in the upper thoracic spine, which is between the shoulder blades. After examination, Dr. Graham found Ms. Christy to be neurologically intact with no neuro deficit, no weakness, no loss of reflexes, and no sensory deficit. According to Dr. Graham, Ms. Christy had a disc bulge at C3-4. She also had a disc bulge at C6-7. In the thoracic spine, Ms. Christy had a disc bulge at T3-4. She had no spinal cord or nerve root impingement.

Dr. Graham explained that Ms. Christy was diagnosed with discogenic pain. She received four epidural steroid injections while under his care. When asked if he believed more probable than not that Ms. Christy's condition was permanent, Dr. Graham stated, "So the disc is never going to go back to totally normal. So in regards to, is the condition permanent of the disc bulge is, yes, that's permanent. What we hope is that over time maybe she gets some improvement." Dr. Graham also noted that the pain from the disc bulge could stop returning. He stated that he believed Ms. Christy would need future medical treatment, more likely than not.

On cross-examination, Dr. Graham agreed that discogenic pain is "localized pain" surrounding specific disc bulges. He explained that his recommendation for future medical treatment was based upon what he would "expect to occur based on treatment of other patients." Dr. Graham stated there was no certainty that Ms. Christy's pain was going to continue. He agreed that disc bulges occur for many reasons. He admitted that the only abnormal finding concerning Ms. Christy was the disc bulge at T3-4, which is in the middle of the shoulder blades. Regarding future medical treatment, Dr. Graham noted that he did not issue a detailed report for Ms. Christy, but spoke to Mr. Gisclair, a life planning expert, about her future medical treatment, which he recommended occur for the next five to eight years.

6

Concerning Mr. Chatman's treatment, Dr. Graham testified as follows. He first saw Mr. Chatman on July 11, 2018. Mr. Chatman presented with complaints of neck pain on his left side radiating into his left shoulder and also along the left shoulder blade. The majority of Mr. Chatman's pain was in the left side of the neck, made worse with cervical rotation. His reflexes were normal, strength was normal, and he had no sensory deficit.

Dr. Graham stated that Mr. Chatman had a disc bulge at C4-5, but that the majority of his symptoms seemed to be stemming from the cervical facet joints. Dr. Graham recommended and Mr. Chatman underwent a cervical dorsal medial branch block on the left. That procedure was eventually followed with radiofrequency ablation, also called nerve burning, for Mr. Chatman's cervical facet syndrome. Dr. Graham recommended future medical treatment for Mr. Chatman for five to eight years.[6]

Regarding objective findings, Dr. Graham testified that Mr. Chatman's imaging report showed facet hypertrophic signal alteration right greater than left at C5-6 and alteration producing mild right asymmetric foramen narrowing at C6-7. Dr. Graham agreed that the disc bulge at C4-5 was present in 2014.

Additionally, Dr. Graham testified that he was unaware of Mr. Chatman's 2014 vehicle accident; Dr. Graham was also unaware of Mr. Chatman's January 2018 vehicle accident and stated that his opinion could have changed had he known of the details. Dr. Graham agreed that someone with previous trauma would be susceptible to structural problems in the neck and "wear and tear." Regarding future medical treatment, Dr. Graham noted that he did not issue a detailed report for Mr. Chatman, but spoke to Mr. Gisclair about his future medical treatment. Dr. Graham agreed that sometimes the pain never comes back.

---

[6] Bob Gisclair developed a life care report for Mr. Chatman that includes approximately ten years of treatment. Following are the modes of treatment: chiropractic treatment, cervical radiofrequency ablation, urine drug screens, MRI of the cervical spine, established patient office visits-pain management, and medications.

**Testimony of Bob Gisclair**

Mr. Gisclair was qualified as an expert in life care planning. He met with Dr. Graham to discuss the life care reports for both Ms. Christy and Mr. Chatman. Mr. Gisclair testified that the services recommended by Dr. Graham totaled $128,253.08 for Ms. Christy and $124,237.50 for Mr. Chatman. Notably, Mr. Gisclair admitted that the figures in his life care reports were higher than they should be, as his reports were based on seven to ten years of treatment and Dr. Graham explained in his testimony that five to eight years of treatment was recommended.

Regarding Ms. Christy's care, Mr. Gisclair admitted that a future surgery consult was included in her life care plan, although Dr. Graham testified that he had not made a future surgery consult recommendation. Additionally, regarding Ms. Christy's life care plan, Mr. Gisclair admitted that past treatment was included in the life care report (treatment occurring after April 2020). Similarly, for Mr. Chatman, Mr. Gisclair admitted that treatment that had occurred after February 2020 would be considered past treatment.

**Testimony of Mr. Franklin**

Mr. Franklin, the driver of the vehicle that rear-ended the plaintiffs, stated that following the accident the involved parties each got out of their respective vehicles to observe the damage. Mr. Franklin stated that his car was not damaged. He stated that Ms. Christy's bumper had the imprint from his license plate trim.

**Testimony of Officer Clarence Domingue**

Officer Domingue testified according to his crash report, as he had no independent knowledge of the accident. According to Officer Domingue, Mr. Franklin's vehicle was identified as vehicle number one in the crash report, which is the "at fault" vehicle. The report showed that Mr. Franklin's vehicle had "minor

damage, mostly scuffs." The report also indicated that after the accident Ms. Christy and Mr. Chatman were "shaken up;" they refused medical treatment.

Here, in reviewing an award of general damages, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" vested in the trier of fact. Batson v. South Louisiana Medical Center, 98-0038, p. 9 (La. App. 1st Cir. 12/22/00), 778 So. 2d 54, 59, writ denied, 01-0960 (La. 5/11/01), 792 So. 2d 740. General damages are intended to compensate an injured plaintiff for mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle. Mitchell v. Access Medical Supplies, Inc., 15-0305, p. 3 (La. App. 1st Cir. 11/9/15), 184 So. 3d 118, 120. Since the factfinder is in the best position to evaluate witness credibility and see the evidence firsthand, it is afforded much discretion in independently assessing the facts and rendering an award. See Mitchell, 15-0305 at p. 3, 184 So. 3d at 120.

With reference to Ms. Christy, the trial court, as the trier of fact, was in the best position to evaluate Ms. Christy's credibility and to see the evidence firsthand. The trial court heard Ms. Christy's complaints of pain, and then heard Ms. Christy admit on cross examination that she parasailed.[7] The trial court also heard Ms. Christy deny that she travels, before having to admit to traveling for fun. Based on these facts, the trial court could have reasonably concluded that Ms. Christy lacked credibility and exaggerated the extent of her symptoms.

Moreover, the testimony from Ms. Christy concerning the impact from the accident and injuries on her life was limited.[8] While Ms. Christy stated, on redirect

---

[7] In addition, Ms. Christy testified that she had a "break" in her chiropractic care, as well as her care under Dr. Graham.

[8] Ms. Christy stated during her testimony that some elderly patients in the nursing home moved better than she did.

examination, that she dealt with pain on a daily basis, she nonetheless was able to work, graduate from two school programs, travel for fun, and enjoy her daughter's sports activities. There is no objective evidence demonstrating that Ms. Christy's injuries necessitated any substantial change in her lifestyle. As shown by the record, no physician imposed any restrictions on Ms. Christy. Thus, based on the evidence presented, the trial court could have reasonably questioned Ms. Christy's veracity and discounted the testimony with regard to her pain, suffering, and general damages.

Likewise, the trial court was in the best position to evaluate Mr. Chatman's credibility. Mr. Chatman was not forthcoming with his treating physician about his 2014 vehicle accident. Neither was Mr. Chatman forthcoming about being "T-boned" just three months before the April 2018 accident. There was no evidence that restrictions were imposed upon Mr. Chatman's activities by a physician. Further, there was no evidence that Mr. Chatman's injuries necessitated any change in his lifestyle.

The trial court apparently determined that Mr. Chatman's testimony lacked credibility. In light of the admissions regarding the 2014 and January 2018 incidents, and the scarcity of evidence on the impact of the subject accident and injuries on Mr. Chatman's life, we cannot say the trial court abused its discretion in making its determination.

In support of our findings, we observe the Supreme Court's holding in Wainwright v. Fontenot, 00-0492, p. 9 (La. 10/17/00), 774 So. 2d 70, 76, that "there is no bright line rule at work." A jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured

compensable pain and suffering as a result of defendant's fault.[9] Wainwright, 00-0492 at p. 8, 774 So. 2d at 76.

On the issue of special damages, the trial court apparently made a finding that the plaintiffs were not injured from the accident to the extent claimed, and consequently awarded only some of the future medical expenses sought. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence the future medical expense will be medically necessary. Menard v. Lafayette Insurance Company, 09-1869, p. 13 (La. 3/16/10), 31 So. 3d 996, 1006. A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. Menard, 09-1869 at p. 12, 31 So. 3d at 1006. It is well acknowledged an award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty. It follows, therefore, such awards do not involve determining the amount, but turn on questions of credibility and inferences, i.e., whose experts and other witnesses does the jury believe. Menard, 09-1869 at p. 13, 31 So. 3d at 1006. Notably, as stated by the Supreme Court in Green:

> Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. The trier of fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Green, 03-2495 at p. 5, 874 So. 2d at 843 (Citations omitted).

In the matter before us, as it concerns Ms. Christy, while Dr. Graham opined that Ms. Christy would more likely than not require future medical care, he nevertheless acknowledged there was no certainty that Ms. Christy's pain was

---

[9] See also Crawford v. Shelter General Insurance Company, 20-0494 (La. App. 1st Cir. 7/28/21), 2021 WL3185342, writ denied, 21-01665 (La. 1/12/22), 330 So. 3d 611 (wherein this court upheld an award of $50,000.00 in past medical expenses and $1,000.00 in pain and suffering, past and future, with no other award for general damages).

11

going to continue. During the course of his testimony, Dr. Graham stated, "There is a possibility it gets worse and the injections lose effectiveness ... . There's a possibility it gets better, as well, and we have to do the injections less." Dr. Graham stated, "But probably it will continue the way that it has been." Dr. Graham also stated, "And it's possible that eventually the pain stops returning from the disc bulge."[10]

Moreover, while there was no physician to contradict his opinions, Dr. Graham did testify that Ms. Christy's pain was "basically manageable" with medications at her August 2020 visit. And Ms. Christy testified that she was doing well for a time. While Ms. Christy's pain may have returned, Dr. Graham stated that if Ms. Christy, during parasailing, were to "hit hard and slam [her] neck down," then that could cause her pain to reappear.

Here, the trial court in exercising its judgment, could have reasonably concluded, in light of Ms. Christy's ability to manage with medications, and on the record as a whole, including Dr. Graham's wavering statements on Ms. Christy's future care, that the injuries resulting from the accident would not necessitate the extent or duration of the care and treatment requested.

Additionally, given the discrepancies in Mr. Gisclair's testimony concerning Ms. Christy's life care plan, the trial court could have reasonably concluded that unnecessary future medical expenses were included in the life care plan, especially where the plan was based on approximately ten years of treatment, included treatment that had already been received, and included a surgery consultation that

---

[10] We recognize that the burden of proof for future medical expenses does not require Dr. Graham to know with certainty whether Ms. Christy will need future injections and treatment. We also recognize, however, that the trier of fact may believe and accept a part or parts of a witness' testimony and refuse to accept other parts. Holmes v. Southeastern Fidelity Insurance Company, 422 So. 2d 1200, 1203-04 (La. App. 1st Cir. 1982), writ denied, 429 So. 2d 133 (La. 1983).

12

was not recommended by Dr. Graham and treatment that was not initially needed after the accident.[11]

With the sum awarded, we can certainly conclude that the trial court did not find that Ms. Christy proved by a preponderance of the evidence that the extent of the future treatment sought was medically necessary. We have reviewed the record; we find that it contains a reasonable factual basis to support the trial court's conclusion.

As it concerns Mr. Chatman, we do not find that the trial court's finding is clearly wrong. Mr. Chatman admitted that he had a pre-existing injury, having received treatment for his neck and back from a 2014 accident. Mr. Chatman also admitted that he was involved in a January 2018 accident where his vehicle was "T-boned" after he ran a red light. Following, Dr. Graham testified that someone with previous trauma would be susceptible to structural problems in the neck, as well as "wear and tear."

Given this testimony, the trial court could have found that Mr. Chatman sustained an injury as a result of the April 2018 accident, and also suffered an aggravation of a pre-existing injury. Thus, the trial court could have reasonably found that much of Mr. Chatman's recommended future medical treatment was necessitated by that of a pre-existing injury or other accident. See generally Kaiser, 06-2092 at p. 14, 953 So. 2d at 811 (there was a reasonable factual basis for the jury's finding that only part of the future medical expenses claimed were attributable to the second accident) and Jones v. Bravata, 18-0837, p. 17 (La. App. 1st Cir. 5/9/19), 280 So. 3d 226, 240, writ denied, 19-01850 (La. 2/26/20), 294 So.

---

[11] Ms. Christy's life care plan is based on approximately ten years of future medical care, which is at the most, five years beyond Dr. Graham's recommendation. In addition, the plan includes treatment that Ms. Christy would have already received. Ms. Christy's life care plan includes the following modes of treatment: physical therapy evaluation, cervical epidural steroid injections, MRI of the cervical spine, patient office visits-pain management, physical therapy, heating pad, new patient evaluation-orthopedic spine or neurosurgeon, and medications.

3d 477 (the plaintiff was not entitled to the full amount of anticipated medical expenses since the jury could have found that the majority of the recommended future treatment was unrelated to the accident).[12]

Furthermore, under Green, *supra*, the trial court was entitled to substitute its common sense and judgment for the conclusions of Dr. Graham, as Dr. Graham stated on cross-examination that his opinion could have changed had he known the details of the January 2018 "T-bone" accident. Based on this evidence, and in keeping with Kaiser and Jones herein, the trial court could have reasonably concluded that much of Mr. Chatman's future medical expenses were not the result of the subject accident alone. We cannot say this conclusion is clearly wrong.

In the matter herein, on our review of the record, we do not find this to be one of the cases when a reasonable basis does not exist for the factfinder's conclusion, nor do we find that the awards for Ms. Christy and Mr. Chatman represent an abuse of the factfinder's vast discretion.

## CONCLUSION

For the above and foregoing reasons, the April 1, 2021 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs/appellants, Dionne Christy and Demond Chatman.

**AFFIRMED.**

---

[12] We note, however, that a tortfeasor takes his victim as he finds him and when a defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. Guillory, 09-0075 at p. 26-27, 16 So. 3d at 1124.

14



STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0942

DIONNE CHRISTY AND DEMOND CHATMAN

VERSUS

ATLANTIC SPECIALTY INSURANCE COMPANY, LIONEL FRANKLIN,
JR., AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

**Holdridge, J., agreeing in part and dissenting in part.**

I agree that the trial court did not abuse its discretion with respect its future medical and future general damage awards. However, I find that based on the entire record, the trial court's award of past medical expenses and past general damages to both plaintiffs are so inconsistent as to constitute an abuse of discretion. In this case, the trial court awarded plaintiffs the full amount of medical expenses they sought for years of medical treatment as well as future medical expenses. In so doing, the trial court had to determine that the medical treatment plaintiffs sought to alleviate their pain was casually related to the accident and that plaintiffs' complaints of pain were credible. Having made that determination, it was entirely inconsistent for the trial court to then award plaintiffs only $15,000.00 and $5,000.00 in past general damages. Since the defendant did not appeal the past medical expense awards, we do not have the option to reduce those awards to correlate with the past general damages awards.