NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-119

NINA SKINNER, ET AL.

VERSUS

STATE OF LOUISIANA, DOTD, ET AL.

**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18418
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED AS AMENDED.

Dan Boudreaux
Keith R. Giardina Law Offices
9100 Bluebonnet, Suite 300
Baton Rouge, LA 70809
(225) 293-7272
COUNSEL FOR DEFENDANT/APPELLEE:
     Liberty Mutual Insurance Co.

**Michael Wayne Landry**
**Assistant Attorney General**
**Ste 1200, One Lakeshore Dr**
**Lake Charles, LA 70629**
**(337) 491-2880**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**State of Louisiana, DOTD**

**Barry Alwin Roach**
**Larry A. Roach, Inc.**
**2917 Ryan St.**
**Lake Charles, LA 70601**
**(337) 433-8504**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Nina Skinner, et al.**

**James David Cain, Jr.**
**Loftin, Cain, & LeBlanc**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, LA 70601**
**(337) 310-4300**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Nina Skinner, et al.**

**EZELL, Judge.**

The State of Louisiana, through the Department of Transportation and Development (the DOTD) appeals the decision of the trial court below finding the DOTD to be 50% liable for an accident which took the life of Bryan Skinner. Nina Skinner, Mr. Skinner's surviving spouse, and her children also appeal the judgment of the trial court, claiming that the jury award was abusively low. For the following reasons, we hereby affirm the decision of the trial court as amended.

The accident that forms the basis of this litigation occurred on December17, 2008, on Louisiana Highway 27, in Cameron Parish, Louisiana. Bryan Skinner was operating a truck owned by his employer, Dunham Price, L.L.C., around 7:30 a.m. As he approached a curve on La. 27 near mile post 68, he encountered a variable message sign that had been placed on the edge of the road by the DOTD. As Mr. Skinner was proceeding south on La. 27, he swerved left around the electronic message sign. This caused Mr. Skinner's vehicle to leave the road and enter the shoulder, which had been damaged by Hurricane Ike. The pavement edge had a drop-off of eight and one-half inches. As Mr. Skinner tried to regain control of his vehicle, he veered off the road, where his tires struck the washed-out shoulders again, causing a blowout. Mr. Skinner's truck eventually overturned in the marshy ground, trapping Mr. Skinner inside his vehicle. Mr. Skinner was unhurt from the accident itself but died of asphyxia after being in the truck upside down for over forty-five minutes.

Nina Skinner, individually and on behalf of her minor children, Noah, William, and Michael, filed the current suit against the DOTD, claiming that it placed the electronic message sign too close to the roadway, causing Mr. Skinner to have to make an emergency maneuver resulting in his vehicle leaving the roadway. After a trial on the merits, the jury concluded that the DOTD was partially liable and assessed

the DOTD with 50% fault. The jury also assessed 50% fault to Mr. Skinner. The jury awarded Mrs. Skinner $138,000.00 in general damages and each of her children $100,000.00. They were also awarded $200,000.00 for lost past and future wages as well as funeral expenses. $50,000.00 was also awarded for Mr. Skinner's survival action. The total judgment was for $700,000.00. From that decision both Mrs. Skinner and the DOTD appeal.

The DOTD asserts two assignments of error on appeal, both dealing with its allocation of fault. Mrs. Skinner asserts three assignments of error, two dealing with the award of past and future wages and one concerning Mr. Skinner's survival action award.

Liberty Mutual Insurance Company also appears, claiming that the trial court erred in failing to include the workers' compensation lien judicially confessed to by Mrs. Skinner (via stipulation with Liberty Mutual) in the trial court's final judgment. However, as Liberty Mutual has neither appealed the final judgment of the trial court nor answered Mrs. Skinner's or the DOTD's appeals, this issue is not properly before this court and we will not address this claim.

Because the DOTD's claims would be dispositive of this matter should we agree with it, we will address its assignments of error first. Because the assignments of error asserted both address the same issue, that the jury found the DOTD 50% liable for the accident, we will address them together. As noted in *S.J. v. Lafayette Parish School Board,* 09-2195, pp. 12-13 (La. 7/6/10), 41 So.3d 1119, 1127:

> In Louisiana, appellate courts review both law and facts. La. Const. art. 5, § 10(B). The applicable standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. To reverse a factfinder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record

2

establishes the finding is clearly wrong. *Stobart v. State, Dep't of Transp. and Development,* 617 So.2d 880, 882 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882–883. Accordingly, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. *Id.* at 883.

The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.,* 00-66, p. 10 (La. 10/30/00), 773 So.2d 670, 680, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651 (2001), set forth the standard for reviewing comparative fault determinations as follows:

> This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey,* 95-1119 (La.1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id.*

A review of the record shows there is a reasonable factual basis present for the jury's determination as to the allocation of fault. Both eyewitness testimony and expert testimony were introduced indicating that the variable sign was placed too close to the roadway and played a role in the accident.

Lacey Dougharty testified that she was an eyewitness to the accident, following closely behind Mr. Skinner before the crash. She exhibited a very detailed memory of the events that day and was a very convincing witness. Moreover, she noted the events in her journal that day when her memories were fresh. She testified that the sign appeared to be abnormally large for the small roadway and appeared to be very close to the road. She testified that she witnessed Mr. Skinner swerve to avoid the

3

sign before leaving the road for the first time. She noted that when Mr. Skinner's truck left the roadway, the broken shoulder blew out his rear tires. She stated Mr. Skinner appeared to almost regain control before the truck began to flip. Ms. Dougharty testified that she felt the sign was even closer to the road than depicted in the pictures shown to the jury and that she routinely would drift away from the sign when passing it to avoid a collision because of its proximity to the road. She felt the sign was "dangerously close to the line."

Roger Thomas, an accident reconstructionist, testified that the sign's position "absolutely" played a significant role in the accident, as the sign was placed a mere two feet from the fog line. Mr. Thomas showed that would leave just over a foot of clearance between the sign and the side mirror on a truck such as the one Mr. Skinner was driving if that truck were to move away from dead center of the travel lane. He also testified that the distance could affect the perception of the driver and that the facts backed up Ms. Dougharty's testimony that Mr. Skinner jerked to avoid the sign.

Robert Canfield, an expert in traffic engineering and highway design testified as well. He noted a memo from the DOTD stating that shoulder drop-offs greater than five inches should be fixed immediately due to the great hazard posed, even if it meant paying overtime. The drop-off here was over eight inches and had not been even temporarily fixed in the three months between Hurricane Ike and the accident. Mr. Canfield stated these drop-offs could have simply been temporarily filled with gravel or sand and that he felt that action alone would reduce the chances of an accident such as the one at issue. He also felt that the sign was improperly positioned, both in proximity to the road and in advance of the hazards it warned of. Mr. Canfield noted that regulations called for variable signs to be placed off the shoulder if possible, or as far as reasonable if that were not an option. He noted there was a seven-foot

4

paved shoulder at the location of the sign plus an additional three feet of aggregate shoulder on which the sign could have been placed, which could have greatly increased the clearance given passing vehicles. He stated that DOTD testimony that the ground was too wet on the shoulder to hold the sign after the storm was irrelevant, as three months had passed between the storm and the accident. He asserted that, at the time of the accident, the ground near the site had dried and, at a minimum, the sign should have been moved after its original placement once the area had drained. Mr. Canfield also testified that, according to regulations adopted by the DOTD, the sign should have been placed 500-1000 feet before a hazard as dangerous as the drop-offs but the sign was only 240 feet in front of the shoulder damage, failing to give proper warning.

While the DOTD did present their own expert testimony to counter the claims made above, it is clear that the jury believed Ms. Dougharty and the experts presented by Mrs. Skinner. As there were two permissible views of the evidence, we cannot find that the jury's choice between was manifestly erroneous. The jury's allocation of fault was not clearly erroneous.

Having found that there was no manifest error in the jury's findings as to liability, we now move to the Mrs. Skinner's assignments of error concerning damages. We will first address her claim as to survival damages. Mrs. Skinner claims that the jury's award of $50,000.00 in survival damages was abusively low. We disagree. In *Guillory v. Lee*, 09-75, pp. 14-16 (La. 6/26/09), 16 So.3d 1104, 1116-17, the Louisiana Supreme Court noted (alterations in original):

> It is well-settled that a judge or jury is given great discretion in its assessment of quantum, both general and special damages. Louisiana Civil Code article 2324.1 provides: "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." Furthermore, the assessment of

quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. *Wainwright v. Fontenot,* 00–0492, p. 6 (La.10/17/00), 774 So.2d 70, 74. This court has noted:

> [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

*Perkins v. Entergy Corp.,* 00–1372 (La.3/23/01), 782 So.2d 606, *reh'g denied,* 4/27/01 (quoting *Canter v. Koehring,* 283 So.2d 716, 724 (La.1973)) (*superseded by statute on other grounds*). Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review. *Youn v. Maritime Overseas Corp., et al.,* 623 So.2d 1257, 1261 (La.1993), *reh'g denied,* 10/7/93.

The role of an appellate court in reviewing a general damages award, one which may not be fixed with pecuniary exactitude, is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. This court has long held true to the following principle:

> [b]efore a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.

*Wainwright,* 00–0492, p. 6, 774 So.2d at 74 (quoting *Coco v. Winston Indus., Inc.,* 341 So.2d 332, 334 (La.1977) (internal citations omitted)). *See also Miller v. LAMMICO,* 07–1352, p. 28 (La.1/16/08), 973 So.2d 693, 711 (stating that an appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion and citing *Theriot v. Allstate Ins. Co.,* 625 So.2d 1337, 1340 (La.1993)); *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La.1993); *Reck v. Stevens,* 373 So.2d 498, 501 (La.1979). Furthermore, reasonable evaluations of credibility and reasonable inferences of fact

should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* (citing *Arceneaux v. Domingue,* 365 So. 2d 1330, 1333 (La.1978) and *Watson v. State Farm Fire & Casualty Ins. Co.,* 469 So.2d 967 (La.1985)). Moreover, on review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. *Perkins,* 782 So.2d at 612 (citing *Ambrose v. New Orleans Police Department Ambulance Service,* 93–3099, 93–3110, 93–3112, p. 8 (La.7/5/94), 639 So.2d 216, 221). Reasonable persons frequently disagree about the measure of damages in a particular case. "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn,* 623 So.2d at 1261.

As to the survival action claims of Mr. Skinner, we can find no abuse of the jury's vast discretion. The jury heard Ms. Dougharty testify that when she got to the truck after the crash, Mr. Skinner was lucid and uninjured. Mr. Skinner told her he was neither hurt nor bleeding and he insisted that the bystanders call his employer to let them know of the accident. Ms. Dougharty testified that Mr. Skinner was unaware of the witnesses' efforts to remove debris from around the truck, gave no indication of fear of death, and repeatedly said he was fine. However, she did state that, around forty-five minutes after the accident, he began to tell her in increasing volume he was having difficulty breathing and then went quiet. Based on the evidence present in the record, we can find no abuse of the jury's discretion as to Mr. Skinner's survival claim award.

Mrs. Skinner's next two claims both assert that the jury's award of $200,000.00 for lost past and future damages was abusively low. We agree.

Special damages are those which have a "ready market value," such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages. *Kaiser v. Hardin,* 06–2092, p. 11 (La.4/11/07), 953 So.2d 802, 810 (per curiam)

7

> (citing *McGee v. AC and S, Inc.,* 05–1036 (La.7/10/06), 933 So.2d 770). An appellate court, in reviewing a jury's factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. *Kaiser,* 06–2092 at p. 11–12, 953 So.2d at 810 (citing *Guillory v. Ins. Co. of North America,* 96–1084 (La.4/8/97), 692 So.2d 1029).

*Guillory*, 16 So.3d at 1117-18.

The entirety of the evidence concerning the lost past and future wages Mr. Skinner would have earned but for this accident was contained in the report and testimony of Dr. Randolph Rice. Dr. Rice testified that Mr. Skinner had lost $82,317.00 in past wages from the time of the accident to the trial. When adjusted for Mr. Skinner's own expenses, this number dropped to $67,582.00. This was completely unchallenged. This leaves a mere $132,418.00 for Mrs. Skinner and her children for lost future wages from the jury's award as it stands. In light of the uncontradicted testimony that Mr. Skinner had a work-life expectancy of twenty-five years at the time of trial and a salary of over $41,000.00 per year at the time of his death, this is abusively low. The jury award would not be sufficient even if Mr. Skinner were working for minimum wage. While Mr. Skinner had earned less prior to taking this job, Dr. Rice noted that people usually work their way up and stay at good jobs. Working for Dunham Price was the best paying job Mr. Skinner had ever had and, Mrs. Skinner testified that her husband had no plans to leave his employment there. He was deemed by his supervisor, George Thompson, to be a good employee, about whom Dunham Price had no complaints. Dr. Rice testified that, based on Mr. Skinner's work life expectancy and the salary he was making at the time of his death, the present value of the lost future earnings of Mr. Skinner would have been $738,839. Dr. Rice testified that combined, the value of lost past and future wages of Mr. Skinner was $806,421.00. The DOTD had an economist prepare a report, but did

not submit it to challenge Dr. Rice's testimony.  We find that the jury clearly abused its discretion in awarding only $200,000.00 in light of the uncontradicted evidence before it.  Accordingly, we amend the judgment to increase the award for lost past and future wages from $200,000.00 to $806,421.00.

For the above reasons, the judgment of the trial court is hereby amended to increase the award for lost past and future wages from $200,000.00 to $806,421.00.  In all other respects, the decision of the trial court is affirmed.  Costs of this appeal in the amount of $10,744.00 are assessed against the DOTD.

**AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules-Courts of Appeal.  Rule 2-16.3.